### In re FIRST PEOPLES BANK SHAREHOLDERS LITIGATION.

Civ. A. Nos. 83–2713(B), 83–3055 and 83–3578.

United States District Court, D. New Jersey, Camden Vicinage.

May 25, 1988.

Greenfield & Chimicles by Richard D. Greenfield, C. Oliver Burt, III, Michael D. Donovan, Haverford, Pa., Kozlov, Seaton & Romanini by Philip B. Seaton, Cherry Hill, N.J., Ballen, Keiser, Gertel, Feldman & Agre by Jeffrey M. Keiser, Camden, N.J., Levin, Fishbein, Sedran & Berman by Arnold Levin, Philadelphia, Pa., Stephen M. Hiltebrand, Cherry Hill, N.J., for plaintiffs.

Jubanyik, Varbalow, Tedesco, Shaw & Shaffer by Michael D. Varbalow, Hal J. Shaffer, Cherry Hill, N.J., for First Peoples Bank of New Jersey, a subsidiary of First Peoples Bank Corp., as objector.

Poplar & Florio by Carl D. Poplar, Cherry Hill, N.J., for Steven Shapiro, as objector.

## AMENDED OPINION

JEROME B. SIMANDLE, United States Magistrate:

The issue before this court concerns the extent to which discovery should be allowed in connection with the petition by plaintiffs' counsel for an award of attorneys fees and costs upon the settlement of this shareholders derivative litigation.

### I. *Procedural History*

The joint fee petition of plaintiffs' counsel ["Petitioning Counsel"] was submitted as part of a negotiated settlement of derivative claims on behalf of the shareholders of First Peoples Bank of New Jersey

against defendant William G. Rohrer, the bank's former chairman.[1]

This settlement of the remaining derivative claims would have certain defendants and an insurance carrier pay approximately $6 million to the Settlement Fund. This common fund, less attorneys fees, costs and reimbursement of the settling defendants under the Bank's indemnity resolution, will be paid to the Bank for the benefit of the Bank's shareholders. Plaintiffs' counsel herein also participated in a declaratory judgment action brought by First Peoples Bank against INA Underwriters Insurance Company; that action was filed in the Superior Court of New Jersey seeking a judgment that INA was obligated to defend the Bank and its directors and pay any judgments that might be rendered against them in the instant matter. *Henry, et al. v. Insurance Company of North America*, No. C–290–84 (Ch.Div.N.J., Camden County) ["INA litigation"]. INA joined the present plaintiffs as third-party defendants in that suit on the ground that these plaintiffs had received an assignment of certain rights of the Bank's directors and officers pursuant to the prior partial settlement, and that plaintiffs should thus be joined to be bound by any adjudication upon the policy. The INA litigation was ultimately settled, with a sum being paid by INA to the Settlement Fund of this case. Plaintiffs' counsel thus also seek an award of fees in connection with the INA litigation.

The present fee petition seeks an award of $1,475,811 in fees[2] and $70,934.28 in costs. The proposed settlement, other than the petition for counsel fees, has been approved by the Honorable Stanley S. Brotman, and the fee petition has been referred to the undersigned Magistrate for appropriate hearings and a report pursuant to 28 U.S.C. § 636(b), by Order entered April 5, 1988.

The plaintiffs' attorneys have submitted various information in support of this petition. The Affidavit of C. Oliver Burt, III, presents the charges and expenses which counsel seek. The information is in the form of summaries of the records of Greenfield & Chimicles, plaintiffs' lead counsel, and affidavits of other plaintiffs' counsel, as to time spent and hourly rates charged. The exhibits attached to Burt's Affidavit include:

1. Charts Re: Lodestar
2. Greenfield & Chimicles Firm Biography
3. Aff. of Jeffrey M. Keiser
4. Aff. of Arnold Levin, including Biography
5. Aff. of Philip B. Seaton
6. Letter of Stephen M. Hiltebrand.

These submissions express the hours expended by each attorney and paralegal who worked on the case. These hours are broken down into nine broad categories regarding type of work, such as (1) Pre-complaint Proceedings, (2) Research/Briefs, (3) Discovery/Analysis, (4) · Court Hearings/Conferences, (5) Appellate Work, (6) Letters/Telephone/Meetings, (7) Settlement/Notice/Administration, (8) Interfirm/Co-counsel, and (9) Other/Travel/Organization. There is no information which provides data for the specific attorney activity and dates when services were rendered.

Regarding hourly rates of pay, the information given includes the "current rate" for each attorney, and a brief discussion of these rates, noting that all work has been made subject to the current, rather than historical, rate for each attorney. There is also an exhibit attached to the Plaintiffs' Response in this matter, filed April 5, 1988, setting forth the names of various other securities cases in which plaintiffs' lead counsel have received awards of counsel

---

1. Class claims against all defendants and the derivative claims against other directors of First Peoples were previously resolved by partial settlement approved July 12, 1984, and derivative claims against the Bank's outside auditors, Ernst & Whinney, were dismissed on procedural grounds on June 30, 1986.

2. Petitioning counsel claim 3,316 hours expended at hourly rates ranging from $63.92 for paralegals through $295.00 for lead counsel, for a fee of $527,079.50. Counsel propose multiplying this amount by an enhancement factor of 2.8 times, to yield a total fee of $1,475,822.

fees in the past few years, but without giving information as to the fee approved in each case, nor with respect to the fee experiences of other counsel.

Objections to requests of plaintiffs' counsel have been timely filed by two parties— First Peoples Bank of New Jersey itself (represented by the firm of Jubanyik, Varbalow, Tedesco, Shaw & Shaffer) and Steven Shapiro, a substantial Bank shareholder (represented by Carl Poplar, Esquire) [hereinafter the objectors.] These objections are based on wide-ranging grounds, and there is no specific or detailed objection made. The grounds for objection include:

(a) The requested fees are excessive and contrary to law.

(b) The times claimed to have been devoted to the matter were overstated.

(c) Counsel for plaintiff did not in any substantial way contribute to the settlement of the derivative phase of the litigation.

(d) Less experienced counsel could have performed much of the work.

(e) The joint petition does not break down the services rendered by the various counsel to identifiable events which would enable the court to determine the time allocated per "identifiable event" and to check for duplication by counsel.

(f) The hourly billing rates for various attorneys are unreasonable.

The objectors have placed no factual materials before the court by which to contest counsel's fees. Instead, the objecting parties seek discovery in preparation for a hearing at which the fee requests would be adjudicated.

The discovery sought from plaintiffs' counsel would include production of time sheets and billing records, hourly rates of compensation (historical time charges), discovery of allegedly unproductive time expended, including inefficient, wasteful and duplicative legal services rendered, review of precise services and hours of each attorney for each identifiable event or activity, review of invoices and bills for costs including expert witnesses, and "for each day time is claimed to have been spent, the records reflecting hours billed by them to other clients, records of billing rates for non-contingent fee clients, including paralegal rates from 1984 to date." The objecting parties also seek to take the depositions of almost every attorney who has performed services for the plaintiff. No particular reason has been advanced for obtaining testimony under oath from these counsel.

Petitioners have strenuously opposed such discovery, and they seek an order denying discovery or, alternatively, directing First Peoples Bank to comply with discovery. The cross-discovery sought includes documents and fee records concerning fees paid by the Bank to counsel in the INA litigation and to counsel who represented the individual officers and directors who were defendants in this case.

Furthermore, petitioners seek a protective order under which any discovery that they supply would be provided only to the court *in camera*, rather than to the objectors' counsel or to the objectors themselves.

## II. *Discussion of Law*

### A. Pre–Hearing Discovery

In setting an attorney's fee, the district court is not to become enmeshed in every detail of the professional representation, nor should such inquiry necessarily assume massive proportions, *see Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 109 (3d Cir.1976). The Supreme Court has likewise stated in *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983): "A request for attorney's fees should not result in a second major litigation."

Nevertheless, the Third Circuit has directed the District Courts to "scrutinize the fee petitions to determine what tasks were ministerial or clerical in nature, and that therefore should not be compensated at the same rate for legal service." *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir.1978). Following *Baughman's* teachings, the district court in *Wher v. The Burroughs Corp.*, 477 F.Supp. 1012, 1016 (E.D.Pa.1979) required submission of

a more detailed supplemental affidavit from petitioning counsel providing:

> specific detailed evidence of the precise services rendered by counsel for plaintiff and reasonably necessary hours expended particularly with respect to each identifiable event or activity in the case, *e.g.*, each document filed, each deposition involving participation by counsel for plaintiff, each conference attended, each court hearing, in order to provide sufficient and adequate information for the court to evaluate claimed hours and the nature of the services performed.

This approach, requiring a more detailed application to be submitted to the court, was also embraced in *In re Fine Paper Antitrust Litigation*, 98 F.R.D. 48, 237 (E.D.Pa.1983), *aff'd in part*, 751 F.2d 562 (3d Cir.1984), where the district court required an application which included:

> Copies of contemporaneous daily handwritten, typed and computer time records prepared by each attorney or legal assistant, and copies of all weekly, monthly and year end compilations of the daily time sheets prepared by or for an attorney or legal assistant. . . .

The court provided for same to be filed under seal. Furthermore, in determining the reasonable hourly rate, the Supreme Court requires the applicant to produce "satisfactory evidence" in addition to the attorney's own affidavits that the requested rate is in line with prevailing rates. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984).

Any discovery must be limited to information relevant to the factors which the court will eventually consider in assessing the fee. Professor Newberg has stated, as a general rule, the following:

> Depositions of petitioning attorneys should be largely prohibited and interrogatory, document or admission requests should only be sparingly granted and narrowly focussed on material relevant facts to avoid harassment of petitioners, undue prolongation of the proceedings, and undue expense.

H. Newberg, *Attorney Fee Awards* § 2.22 (1986).

Similarly, according to the *Manual for Complex Litigation, Second* § 24.13 (1985), discovery upon fee petitions should "rarely be necessary" when "the documentation in support of fee applications is sufficiently detailed and conclusive."

The *Manual for Complex Litigation, Second* [MCL 2d] assumes, however, that the application for counsel fees in a major piece of litigation is more fully documented than the present summary submissions. First, the MCL 2d suggests that detailed time and expense records be filed periodically during the litigation, *see* MCL 2d, § 24.21, which has not been required in the present case. Second, the fee petition should identify the "particular task or activity involved and the date on which such services were performed," MCL 2d, § 24.13. Third, when multiple attorneys seek fees, counsel "may be required to provide the court with a compilation arranged by each particular task or function, listing the hours and expenses (including travel) claimed by each participating lawyer," *id.*, to enable the court to determine "whether excessive or duplicative hours are being claimed with respect to the same conference, deposition, brief, or other activity," *id.*, *citing In re Fine Paper Antitrust Litigation, supra.*

■ Although the contours of a fee petition are rather well-settled, there is less guidance on the proper scope of discovery, if any, in connection with those petitions. Whether discovery is warranted depends on consideration of the nature of the adversary process in determining a reasonable fee after hearing the objections which have been raised. The legitimate needs of petitioner counsel for a prompt adjudication of their fee request must be accommodated with the needs of the objectors to obtain reasonable discovery to probe the requested fees and costs and, ultimately, to frame the issues for adjudication after a well-focused adversary proceeding.

If any discovery is sought from the petitioners, it must therefore squarely relate to the issues in dispute in this fee petition,

and it must not launch an excursion into the barely relevant or beyond the borderline of harassment. In the present case, the fee award will be calculated based upon the "lodestar" amount, adjusted to account for certain factors to render the fee awarded fair and reasonable. *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 584 (3d Cir.1984). The court's authority of fee approval arises from the common-fund doctrine, which is "part of the historic equity jurisdiction of the federal courts." *Sprague v. Ticonic National Bank*, 307 U.S. 161, 164, 59 S.Ct. 777, 779, 83 L.Ed. 1184 (1939); see generally 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* §§ 2675–2675.1 (1983).

■ The discovery must further reasonably promote the adjudication of the lodestar factors in fixing the fee. The lodestar technique is familiar, deriving from *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973) [*Lindy I*], appeal following remand, 540 F.2d 102 (3d Cir.1976) [*Lindy II*]. The court, generally speaking, must first determine the hours reasonably expended by counsel that created the fund. Second, the court must determine a reasonable hourly rate for the attorney's services. The court multiplies the hours by the rates to obtain the "lodestar" of the court's fee determination.

The lodestar may then be increased or decreased by a positive or negative multiplier to reflect the outcome of the case, the contingent nature of the case (including likelihood of success) and quality of the attorney's services. *In re Fine Paper Antitrust Litigation, supra*, 751 F.2d at 583–84. Although the Supreme Court in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), noted in dicta that under the common fund doctrine, a reasonable fee "is based on a percentage of the fund bestowed on the class," *id.* at 900 n. 16, 104 S.Ct. at 1550, no decision of the Supreme Court has so held, and the Third Circuit's present teachings are to the contrary. Thus, the relatively more detailed lodestar analysis of reasonableness of hours spent and rates charged, adjusted by the positive or negative multiplier, must be undertaken to set fees for prevailing counsel in this case.

■ The *Lindy* methodology has been criticized as leading to certain abuses by lawyers. The Third Circuit Task Force on Attorney Fees reported as follows:

Although designed to curb certain abuses, *Lindy* has led to others. As was strongly suggested in the recent Third Circuit decision, *In re Fine Paper Antitrust Litigation*, [751 F.2d 562 (3d Cir. 1984)] *Lindy* encourages lawyers to expend excessive hours, and, in the case of attorneys presenting fee petitions, engage in duplicative and unjustified work, inflate their "normal" billing rate, and include fictitious hours or hours already billed on other matters, perhaps in the hope of offsetting any hours the court may disallow. These various forms of running the meter are accompanied in a number of cases by the presence of far too many law firms submitting fee petitions. The latter phenomenon seems to be the inevitable by-product of a fee-setting scheme based on hours worked regardless of the number of lawyers involved, rather than a limited percentage of fixed monetary recovery.

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 247–48 (1985) [footnotes omitted]. Thus, any discovery process must be sufficient to ascertain with reasonable confidence that the petition is well-grounded in fact and not abusive.

Pre-hearing discovery in complex fee petition cases should also serve the function of aiding the court and the adverse parties to prepare for the final hearing. The Third Circuit has emphasized that "the attorney's claim for fees from a fund in court is a cause of action, belonging to the attorneys, for the reasonable value of their services, for which a hearing is required." *In re Fine Paper Antitrust Litigation, supra*, 751 F.2d at 584. A preclusion of reasonable pre-hearing discovery, where a disputed $1.5 million claim is at stake, would be a jurisprudential anomaly. Furthermore, since the hearing on the fee applica-

tion in an equitable fund case "requires compliance with those procedural rules which assure fair notice and an adequate opportunity to be heard," including application of the Federal Rules of Evidence, *id.* at 584, discovery which clarifies, tests, undermines or buttresses the claimed fees may be essential to prepare for the final hearing.

Another related problem with the common fund case is that the party paying the settlement or judgment which creates the fund is apt to be indifferent to the fees, because the defendant has no further interest in the fund. As a result, the adversary process suffers and the court may be deprived of the advantages of focused and informed advocacy when it assesses fees. Instead, "the plaintiff's attorney's financial interests conflict with those of fund beneficiaries," as noted by the Third Circuit Task Force, 108 F.R.D. at 251. As a result "the plaintiffs' attorney's role changes from one of a fiduciary for the clients to that of a claimant against the fund created for the clients' benefit. The perspective of the judge also changes because the court now must monitor the disbursement of the fund and act as a fiduciary for those who are supposed to benefit from it, since typically no one else is available to perform that function." *Id.* at 255.

The presence of the objectors in this common fund case serves to sharpen the adversarial adjudicative process, *see Prandini v. National Tea Co.,* 557 F.2d 1015 (3d Cir. 1977); *Levit v. Filmways, Inc.,* 620 F.Supp. 421 (D.Del.1985). This process cannot, however, devolve into a burdensome litigation with opportunity to harass the adversary after the main battles upon the merits have already been fought.

With these considerations in mind, the court will examine each category of requested discovery.

**B. Discovery from Petitioning Counsel**

At the outset, the court notes that the fee petition, as it presently stands, is insufficient to enable this court to determine the fee award. The nine categories of activities are exceedingly general and are not self-defining, and in the face of the objections are not sufficient to provide "fairly definite information as to the hours devoted to various general activities...." *Pawlak v. Greenawalt,* 713 F.2d 972, 978 (3d Cir.1983), *quoting Lindy I,* 487 F.2d at 167. The application is also deficient regarding the basis for the hourly rates sought, and more information must be required beyond the affidavits of counsel to form a basis of "satisfactory evidence" that these rates are in line with generally prevailing rates, see *Blum v. Stenson, supra,* 465 U.S. at 900 n. 11, 104 S.Ct. at 1547 n. 11. This may be remedied, for example, by supplementing the application with respect to hourly rates approved for these petitioning counsel in other recent cases, and a supplemental fee application will be required as part of the pre-hearing process, as discussed below.

The present format of the fee petition frustrates the testing of several of the objections, such as whether the times claimed are overstated, whether various tasks could have been performed adequately by less experienced counsel, whether duplication of counsel has occurred, and whether the hourly billing rates are unreasonable. The efforts expended in the INA litigation have not been separately identified, which may be necessary to aid the court's analysis of the efforts of petitioners in that case. Each of these objections must be overcome with a more complete supplemental application.

The objectors' document production requests are as follows:

1. Production of all time sheets and billing records of all partners, associates, paralegals and other individuals for whom fees are sought in the above-captioned litigation.

This request will be granted and petitioning counsel shall supply these documents, with the following procedures for time sheets. The original handwritten time sheets of Greenfield & Chimicles are voluminous, consisting of hundreds or thousands of sheets underlying the several thousand hours claimed by this firm, and many sheets contain information regarding work performed by the attorney on the

given day in other cases. This firm has, however, maintained roughly contemporaneous computerized time sheets, prepared usually within one week from the handwritten time sheets, which are represented to be a verbatim transcription of the underlying sheets and upon which the fee petition has been based. If indeed the computer sheets are accurate, retrieval and production of the handwritten sheets would be cumulative and unduly burdensome for present purposes. Moreover, the production of computer time sheets in connection with a fee petition request is authorized by General Rule 46A of this Court [stating, in part, "Computerized time sheets, to the extent that they reflect the above, may be utilized and attached to any such affidavit showing the time units expended."] The objectors are concerned that the accuracy of the computerized records be verified, and they seek production of all underlying time sheets to compare with the computerized records.

■ On balance, the court agrees with the objectors that verification is necessary, but it also agrees with petitioners that complete retrieval and production of the handwritten records of Greenfield & Chimicles is burdensome and apparently unnecessary where the computerized records are an accurate, readily accessible repetition of the daily time sheets. The court will require production by Greenfield & Chimicles of all computerized time records upon which their portion of the fee petition is based. Then, the objectors may identify a total of fifty (50) daily computerized time sheets of their choice for which the underlying handwritten sheets are required, to verify the computerized entries for those dates, which counsel for Greenfield & Chimicles shall supply as items of supplemental discovery. If significant discrepancies occur between the handwritten and computerized records, discovery of the remaining underlying time sheets will be required.

Finally, any daily time sheets produced under this request by any of the petitioning counsel may be redacted to eliminate data by which an unrelated case, appearing on the same time sheet, could be identified.

Case names and other identifying data for unrelated cases (*e.g.*, names of judges, deponents, etc.) may be deleted to protect the work product of counsel in those unrelated cases. The time spent and the activity conducted in other cases, however, shall not be deleted, so that data are preserved from which to verify the time claims for the attorney and date in question by looking at the entire day's activities while protecting work product in unrelated cases.

2. All invoices or vouchers for costs and expenses incurred in the above-captioned litigation for which reimbursement is sought, including but not limited to expert witnesses, travel, food and lodging, clerical overtime, computer research and telephone/telecopy and excess postage/federal express/messenger.

This will be granted in part and denied in part. The objectors have not taken issue with the costs itemized, except for expert witness fees, which constitute $50,314.43 of the total costs of $70,934.28. The court will not require further discovery of the minor cost items, which are sufficiently specific, and to this extent the request is denied. The request will be granted, however, with respect to expert witness-related expenses.

3. Copies of any documents setting forth the billing arrangement for the experts utilized by Plaintiffs' counsel for consultations set forth in their Joint Petition.

This will be denied as cumulative and excessive. The amount of time spent consulting and the fees paid will be reflected in documents subject to discovery above.

4. Documents setting forth the historic billing rates for all partners, associates, and paralegals whose fees are requested in the subject Joint Petition for the years 1984 through the present.

■ Discovery of billing rates is permissible because it is highly relevant to the issues of petitioner's duty to provide "satisfactory evidence" regarding the requested rates other than counsel's affidavit that the rates constitute his or her normal billing rate, *see Blum v. Stenson, supra,* 465 U.S. at 900 n. 11, 104 S.Ct. at 1547 n. 11. This

will be granted in part to require disclosure of all hourly rates actually approved by other courts with respect to similar litigation by these law firms' attorneys and paralegals in securities related cases in 1984 through the present.[3] A table summarizing the hourly rates requested and approved for each petitioning attorney and paralegal in each such case would appear to be sufficient discovery. The request is otherwise denied as overbroad and unduly burdensome, as it would require counsel to search all files to obtain historic billing information.

5. Time sheets, billing records and other documents setting forth the time billed by the individuals for which attorney fees are sought on those days on which they performed services in the above-captioned matter.

This request will be denied, except to the extent that redacted time sheets are required in Item 1 above. The unredacted data for time and activities in other cases appearing upon the daily time sheets for this case, as discussed above, will help to verify the accuracy of the time claimed by petitioning counsel in this case. The reconstruction of an entire day's activities from other records, however, will not be required because to do so would be unduly burdensome and because there has been no allegation of overlapping time claimed in this case with other matters. If good cause is shown to more carefully examine particular days' time sheets and billing records, a further request may be justified, *see* MCL 2d, § 24.13 n. 28.

6. Time sheets, billing records and other documents setting forth each day time is claimed to have been spent, and the records reflecting hours billed by them to other clients.

This will be denied for the same reason as Item 5 above.

7. Billing records and other documents setting forth records of billing rates in non-contingent fee clients, including paralegal rates from 1984.

This will be denied as excessive. The billing rates to clients in other types of matters are not sufficiently germane to require the broad based discovery of other unrelated files which is sought in this request.

Next, the objectors seek to take the oral depositions of petitioning attorneys Greenfield, Burt, Verratti, Donovan, Reyna, Stevens, Seaton, Keiser, Levin, Berman and Gross.

■ This request will be denied because there has been no showing that these depositions of counsel are necessary in light of the rather plenary documentary discovery which counsel are being required to provide. The documents should speak for themselves, and deposition discovery presently appears to be too cumbersome, time-consuming and annoying to be permitted as a matter of routine. If there were serious ambiguity or incompleteness in the record, a limited amount of deposition discovery could be permitted by request for follow-up discovery.

C. Discovery from Objectors

The cross-discovery sought by the petitioning counsel is set forth in a three-item Request for Production of Documents, which discovery is sought only if this court determines, as it now has, that pre-hearing discovery is appropriate. Petitioners seek from the Bank various records connected with the Bank's and Bank's directors' expenditures for legal services in this case and the INA litigation.[4]

---

3. Although current rates may be used in setting fees for prevailing counsel, see *Pennsylvania v. Delaware Valley Citizens Council,* —— U.S. ——, 107 S.Ct. 3078, 3081, 97 L.Ed.2d 585 (1987), the discovery of historical rates approved by other courts for petitioning counsel is permitted as a tool for assessing reasonableness of the current requested rates.

4. Petitioning counsel have requested that the Bank produce the following documents in its possession, custody or control for inspection and copying:

1. All time sheets, billing records, fee agreements, retainers, correspondence, and other documents for all firms, partners, associates and paralegals reflecting time spent and/or billed in connection with the legal representation of the Bank and/or Director Defendants and/or the plaintiff-insureds in [this case] and [the INA Litigation].

It is recognized that evidence of fees and expenditures of other parties may be relevant to the issue of the reasonableness of the petitioners' fees. *See, e.g., In re Fine Paper Antitrust Litigation,* 751 F.2d at 587, *citing Blowers v. Lawyers Coop Publishing Co.,* 526 F.Supp. 1324, 1325–27 (W.D.N.Y.1981); *Naismith v. Professional Golfers Ass'n,* 85 F.R.D. 552, 562–64 (N.D. Ga.1979); *Stastny v. Southern Bell Tel. & Tel. Co.,* 77 F.R.D. 662, 664 (W.D.N.C. 1978); see also H. Newberg, *Attorney Fee Awards* § 6.07 (1986).[5] *In the Fine Paper* case, the district court's denial of a petitioner's motion to compel the settling defendants and the objectors to disclose fees paid to counsel in the case at hand and in other antitrust cases was affirmed in light of "all the evidence offered on hours and rates, and the likelihood that such discovery would generate inquiries into collateral matters, such as privilege," 751 F.2d at 587.

■ Discovery sought from objecting counsel may properly be denied, such as where subpoenas were served upon objecting counsel for the purpose of cross-examination to establish the objectors' motivation in pressing their objections to the fee requests, *In re Fine Paper Antitrust Litigation,* 751 F.2d at 586–87 [finding no abuse of discretion in district court's quashing of subpoenas]. The documentary discovery sought from the Bank as objecting party is appropriate in the present case.

The fee discovery sought from the Bank is relevant and helpful, and it would not unduly burden the record, where the discovery is confined to the attorney fees paid by this objector in this case and the related INA litigation. First, the Bank is an objecting party which has raised the issue of reasonableness and therefore should willingly provide reasonable, limited and accessible information on this issue. Second, the Bank has raised no claim of privilege for non-disclosure of its legal fee arrangements and payments. Third, this discovery request from a single objecting party is unlikely to promote confusion or collateral inquiries. Fourth, any claimed confidentiality of billing information by the Bank's lawfirms who are not involved in this fee petition dispute can be protected by a suitable confidentiality order, discussed below. Accordingly, the petitioning counsel's request for fee information of counsel retained by or on behalf of the objector Bank will be granted, and the Bank shall produce the documents sought in the Petitioners' Request for production of documents.

### D. In Camera Inspection or Protective Order

The petitioners have requested to submit these discovery materials to the court for *in camera* inspection rather than to adverse counsel. In *Fine Paper,* for instance, supplemental time records required by the district court were to be submitted *in camera, see In re Fine Paper Antitrust Litigation,* 98 F.R.D. at 237. Similarly, the settling defendants in a common fund case may be required to submit a statement regarding their own fees for *in camera* inspection, *see* MCL 2d, § 24.13 n. 29.

---

2. All retainers, agreements, correspondence or other documents reflecting the billing arrangements with any counsel covered by Request No. 1 in connection with the legal work in the Bank Litigation and the INA Litigation.
3. All checks, correspondence, records and other documents reflecting bills received and/or payments sent in connection with the legal representation of First Peoples Bank, the Director Defendants, and/or the plaintiff-insureds in the Bank Litigation and the INA Litigation.

5. Professor Newberg has stated:
When the fee applicant's hours or rates are challenged, the applicant will commonly seek discovery of the opposing party's hours expended and rates charged in the litigation, to seek to prove the reasonableness of the applicant's fee request.

\* \* \* \* \* \*

[C]orresponding information of defendants may be desirable to permit the court to assess defendants' litigation efforts and fees as compared to the plaintiff.
H. Newberg, *Attorney Fee Awards* § 6.07 (1986). The same principles would apply in this common fund case, in which the Bank objector, while not a defendant, retained counsel in the related INA litigation and apparently provided reimbursement for fees of defendants who were Bank Directors in the present case.

The court has authority to require submission of relevant documents for *in camera* inspection, or to make other appropriate orders to preserve the privacy of confidential material. *See* Rules 26(c)(5), (7) and (8), Fed.R.Civ.P.; 8 C. Wright & A. Miller, *Federal Practice & Procedure*, §§ 2043 and 2214 (1970 ed.). The broad discretion of the court in handling confidential information was summarized by Justice Holmes:

> It will be understood that if, in the opinion of the trial judge, it is or should become necessary to reveal the secrets to others, it will rest in the judge's discretion to determine whether, to whom, and under what precautions, the revelation should be made.

*E.I. DuPont deNemours Powder Co. v. Masland*, 244 U.S. 100, 103, 37 S.Ct. 575, 576, 61 L.Ed. 1016 (1917).

In many circumstances a court has little choice but to require *in camera* inspection of sensitive materials which cannot be shared among adverse counsel absent judicial prescreening, such as where national security information is allegedly involved, *EPA v. Mink*, 410 U.S. 73, 92, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973), or where other privileged documents are reviewed by the judge to ascertain whether they have been accurately withheld from discovery, *see e.g., Ronson Corp. v. Liquifin Aktiengesellschaft*, 370 F.Supp. 597 (D.N.J.1974), *aff'd*, 497 F.2d 394 (3d Cir.), *cert. denied*, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 108 (1974). Indeed, in reviewing documents in connection with attorney fee requests, the court may occasionally determine that submission under seal is the prudent course, as did the district court in *Fine Paper*, 98 F.R.D. at 237 [although that opinion recites no reason].

■ Nothing compels the conclusion in this case that the information regarding counsel fees, billing arrangements and the like is so sensitive that an adversary's eyes should not see it. The shortcomings of *in camera* inspection of documents and submissions underlying the fee petition include the limitations of the court's opportunity to process the information without the benefit of meaningful adversarial argument and deprivation of the opponent's opportunity to test the information.[6] Moreover, the petitioners, as the persons seeking to avoid disclosure to the objectors' counsel, have the burden of showing good cause under Rule 26(c), Fed.R.Civ.P., for precluding discovery by "demonstrating a particular need for protection." *Cipollone v. Liggette Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.*

This court has not been persuaded that the exchange of these materials in discovery among adverse counsel is likely to harm petitioners' legitimate interests. The information to be exchanged pertains to this case alone (with the limited exception of court-approved hourly rates in other litigation). Sensitive communications with clients are not likely to be encompassed in this discovery, as petitioners' counsel has

---

6. *In camera* inspection is not a suitable substitute for informed discovery and adversarial debate in various circumstances. For example, records of conversations arising from illegal wiretaps must be disclosed by the prosecutor to the defendants without *in camera* screening by the trial judge. *Alderman v. United States*, 394 U.S. 165, 182, 89 S.Ct. 961, 971, 22 L.Ed.2d 176 (1969). The *Alderman* Court noted that, while [a]dversary proceedings will not magically eliminate all error, ... they will substantially reduce its incidence by guarding against the possibility that the trial judge, through lack of time or unfamiliarity with the information contained in and suggested by the materials, will be unable to provide the scrutiny which the Fourth Amendment exclusionary rule demands.

*Id.* at 184, 89 S.Ct. at 972. The Court, therefore, concluded that "the task [of determining whether the prosecutor's case was tainted by the illegally-seized evidence] is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court to identify those records which might have contributed to the Government's case." *Id.* at 182, 89 S.Ct. at 971 [footnote omitted]. Similarly, *in camera* review of documents withheld by the government under the Freedom of Information Act was found to be "burdensome, ... conducted without the benefit of criticism and illumination by a party with the actual interest in forcing disclosure." *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

confirmed at oral argument. The present case has been settled and counsel are not known to be adversaries in any related litigation. Petitioners have not articulated a clear basis for precluding objectors' counsel from reviewing this discovery. Finally, discovery here is a two-way street, and equally sensitive counsel fee and billing information will be coming to petitioners' counsel. Clearly, both sides have equal incentives to adhere to restrictions upon the use of this discovery. Accordingly, petitioners' request for *in camera* inspection and preclusion of an exchange of discovery will be denied.

The court does find, however, that this information concerning billing practices, payments, fee arrangements, and other fee related information, arising from the relationships of lawyers and clients, including law firms who participated in the litigation but who are not participants in this fee dispute, is sufficiently protectable that it should be the subject of a pre-hearing confidentiality order precluding dissemination of documents to persons other than counsel who have appeared in this case and in the INA litigation and consultants specially retained for this fee petition litigation. *See Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 999 (10th Cir.), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965); *Scovill Mfg. Co. v. Sunbeam Corp.,* 61 F.R.D. 598, 603 (D.Del.1973); *Spartanics, Ltd. v. Dynetics Eng'g Corp.,* 54 F.R.D. 524 (N.D.Ill.1972). These materials may be discussed by counsel in legal consultation with their clients, but copies may not be given to the clients, nor may any person use such information for purposes other than this litigation. *Julius M. Ames Co. v. Bostitch, Inc.,* 235 F.Supp. 856 (S.D.N.Y. 1964); *Gentron Corp. v. H.C. Johnson Agencies, Inc.,* 79 F.R.D. 415 (E.D.Wis. 1978).

Thus, discovery will be conducted pursuant to a protective order so that the broadest exchange of meaningful information can take place among counsel,[7] without engaging in protracted debate about the dissemination of particular documents, and promoting "the just, speedy and inexpensive determination of [this] action." Rule 1, Fed.R.Civ.P.

### E. Supplemental Petition and Chronological Index

After this exchange of documentary discovery permitted above, petitioners shall file a Supplemental Petition which cures the vagueness and generality of the present Petition in the manner discussed herein. The Supplemental Petition shall include for each attorney and paralegal the following additional information, in affidavit form, consistent with General Rule 46 of the District of New Jersey, entitled "Compensation for Services Rendered and Reimbursement of Expenses": A chronological statement of (1) the date of each service rendered; (2) a reasonably detailed description of each service rendered, *e.g.,* the particular brief being written, the deposition attended, the subject of a meeting or conference; (3) the time spent rendering each service; (4) whether the service related principally to this case or to the INA litigation; (5) the hourly rate information, described above, from other cases. The summary information already presented in the initial Petition need not be repeated unless that information has changed or errors therein are detected. The court may require submission of additional background information if the Supplemental Petition is ambiguous, incomplete or if particular entries are challenged.

Secondly, as suggested in MCL 2d, § 24.13, *supra,* where multiple attorneys seek fees, this court will require petitioners to prepare and submit a Chronological Index, which is a compilation arranged by each particular task or function in this case and the INA litigation, listing the hours claimed by each participating lawyer for that function;[8] the Chronological Index

---

7. Whether protective procedures will apply to any evidence submitted at the hearing is not determined at this time. Generally, evidence admitted at a trial is public. *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1985).

8. For reasons discussed above, supplemental information regarding costs will not be required

shall contain detail sufficient to enable the court to determine whether the total hours claimed by all counsel for a particular hearing, conference, deposition, brief or other activity are excessive or duplicative.

In other words, each hour of attorney and paralegal time will be reflected in two places in the petitioners' supplemental submissions: (1) by affidavit in the Supplemental Petition, setting forth the services performed by each lawyer; (2) in the Chronological Index, listing the lawyers and paralegals participating in each function with their hours indicated and tallied within the total hours for that function.

Reasonable follow-up discovery requests for clarification or elaboration of previous responses, if promptly made, will be permitted consistent with this Opinion's guidelines. This limited follow-up discovery may go forward concurrently with preparation of the Supplemental Petition and the Response, so as not to delay the final hearing, under deadlines set forth *infra*.

After petitioners file such supplementation, the objectors shall file their Supplemental Response, and the final hearing will then be convened.

F. **Timetable**

Petitioners and objectors shall furnish to each other the discovery set forth above within fifteen (15) days of entry of this Opinion. Any party seeking follow-up discovery or clarification shall do so promptly thereafter, and a response to such discovery request shall be served within seven (7) days of receipt of same. The Petitioners shall file and serve their Supplemental Petition and Chronological Index within thirty (30) days of today's date. Objectors shall file and serve their Supplemental Response within forty-five (45) days of today's date. The hearing upon the application for counsel fees and costs will be convened in approximately sixty (60) days from today's date.

### III. *Summary*

For the reasons stated herein, the objectors' application for pre-hearing discovery is granted in part and denied in part; the petitioners' application to preclude discovery is denied; the petitioners' alternative application for *in camera* inspection is denied; and the petitioners' alternative application for cross-discovery from the objector Bank is granted in part and denied in part. All discovery shall take place under a Protective Order and subject to the timetable set forth herein. An appropriate Order will be entered.

---

with respect to these functions and tasks, although in a different case, where costs are a more significant or questionable element of the petition, cost data for each function or task could be required in accordance with MCL 2d, *supra*.