COALITION TO SAVE OUR CHIL-
DREN, (formerly Brenda Evans,
et al.), Plaintiff,

v.

STATE BOARD OF EDUCATION OF THE STATE OF DELAWARE, the Board of Education of the Brandywine School District, the Board of Education of the Christina School District, the Board of Education of the Colonial School District, and the Board of Education of the Red Clay Consolidated School District (formerly Madeline Buchanan, et al.), Defendants.

**Civ. A. No. 1816–1822 MMS.**

United States District Court,
D. Delaware.

Aug. 27, 1992.

Irving Morris, Morris and Morris, and Leonard L. Williams, Wilmington, Del., of counsel, Louis R. Lucas, of Louis R. Lucas & Associates, Germantown, Tenn., and William L. Taylor, Washington, D.C., for plaintiff.

Bertram S. Halberstadt, of Wier & Halberstadt, Wilmington, Del., for intervening hispanic plaintiffs.

David H. Williams, and Barbara D. Crowell, of Morris, James, Hitchens & Williams, Wilmington, Del., for defendants Brandywine School Dist., Christina School Dist., and Colonial School Dist.

Alfred J. D'Angelo, Jr., and M. Duncan Grant, of Pepper, Hamilton & Scheetz, Wilmington, Del., for defendant Red Clay School Dist.

Mason E. Turner, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, and David A. White, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendant State Bd. of Educ.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Pending before the Court is a fee petition in a school desegregation case. Plaintiff is the Coalition to Save Our Children ("plaintiff"). Defendants are the Red Clay School District, Brandywine School District, Christina School District, Colonial School District, and the State Board of Education. In opposing plaintiff's $650,000 fee petition, Red Clay School District ("Red Clay" or "defendant") asserts: 1) many of plaintiff's billable hours unnecessarily "overlap"; and 2) plaintiff engaged in unnecessary work. The fee petition has generated discovery requests by the parties. Presently before the Court is plaintiff's Motion to Compel the Red Clay School District to Answer Interrogatories and Respond to Requests for Production. Plaintiff initially advised that the matters in dispute are exemplified by two requests for production of documents, numbers 2 and 4. Those requests are:

2. As to professional services rendered to you (whether by an attorney, law firm, expert witness, accountant, consultant, or other professional) in connection with the Litigation for the period 1985 to the present time produce:

a. each and every bill or statement for fees and expenses presented to you; and

b. each and every document reflecting payment by you for professional services.

\* \* \* \* \* \*

4. For each lawyer or law firm who has appeared or otherwise served as your counsel in connection with the Litigation, including any "in-house" counsel, and for each paralegal who has assisted the law-

yer or law firm in the Litigation, produce each and every document (including but not limited to, timesheets, calendars, and datebooks) reflecting or evidencing:

a. An itemization and total number of hours expended by the attorney, law firm or paralegal in your behalf in connection with the Litigation;

b. A description of the work performed;

c. The hourly rate(s) you have been billed by the attorney and the date of such bill(s);

d. The total fees you have been billed by the attorney or firm;

e. The total fees or salary you have paid the attorney or law firm.

(Def. Red Clay Consolidated School District's Answering Brief in Opposition to the Pl.'s Motion to Compel, Exh. B at 4–6 Docket Item 1447 [hereinafter "Dkt."]). Subsequently, plaintiff enlarged its motion to compel to include production by the Red Clay District of a breakdown of the number of hours its present lawyers, Pepper, Hamilton & Scheetz, billed for substantive work in the litigation and the number of hours billed for work on the Coalition's pending Petition for Fees and Expenses. (Dkt. 1462 at 1). At oral argument, plaintiff stated it would deem its requests met if attorney time records and billing statements were produced.

For the reasons that follow, plaintiff's motion will be denied, but defendant will be required to produce much of the information sought by plaintiff.

## I.

Red Clay has objected to document requests regarding the fee arrangements between Red Clay and its attorneys and the work performed by its attorneys. The basis of Red Clay's objection is relevance. In order for the Court to determine whether plaintiff's request is for relevant information, it is important to keep in mind the ultimate issue the Court will decide at the

conclusion of discovery: plaintiff's entitlement to attorneys' fees.

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court discussed what a court should consider in awarding attorneys' fees to a prevailing plaintiff. The starting point "for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939.[1]

The Supreme Court continued:

The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' ... Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.... Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Id.* at 433–34, 103 S.Ct. at 1939–40 (citations and quotations omitted).

In determining what is "reasonable" the Second Circuit Court of Appeals has noted the work of multiple attorneys on the same litigation activity is not unreasonable per se. *See New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983); *see also Bowman v. Pulaski County Special School Dist.,* 723 F.2d 640, 646 (8th Cir.1983) (multiple attorneys on the same litigation activity does not presumptively constitute overstaffing). Indeed, the Third Circuit Court of Appeals

---

1. This calculation is referred to as the "lodestar." Recently, the Supreme Court has referred to the loadstar as the "guiding light" of fee shifting jurisprudence. *City of Burlington v. Dague,* —— U.S. ——, ——, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992)

**64**

has noted, "[a] reduction for duplication 'is warranted only if the attorneys are *unreasonably* doing the *same* work.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1187 (3d Cir. 1990) (quoting *Jean v. Nelson*, 863 F.2d 759, 773 (11th Cir.1988), *aff'd*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990)).

After determining the number of hours reasonably expended, a court

> must examine whether the requested hourly rate is reasonable. Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 [104 S.Ct. 1541, 1547, 79 L.Ed.2d 891] (1984). Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation....

*Rode*, 892 F.2d at 1183.

■ "Although the contours of a fee petition are rather well-settled, there is less guidance on the proper scope of discovery, if any, in connection with those petitions." *In re First Peoples Bank Shareholders Litigation*, 121 F.R.D. 219, 223 (D.N.J. 1988) (magistrate opinion). Whether discovery is appropriate depends, in part, on the objections raised by the opponent to the fee petition going to the reasonableness of the fee petition.

Turning to the discovery problem at issue in this case, defendant argues plaintiff's requests for information and documentation regarding the fee arrangements between Red Clay and its attorneys and the work performed by its attorneys are not relevant. Plaintiff, on the other hand, argues this information is relevant to the Court's determination of the prevailing community rates through a comparison of the rates of the Coalition's lawyers with that of the Red Clay District's attorneys.

Plaintiff also argues the information is necessary to enable plaintiff to respond to defendant's allegations that plaintiff's hours overlapped and were unreasonable.

Professors Schwartz and Kirklin have noted:

> The work of multiple attorneys on the same activity is more easily justified in difficult or complex cases that require a litigation team approach.... However, the courts are inclined to carefully scrutinize the claimed hours of such 'second-chair' counsel to ensure that they are not present merely 'for the purpose of being trained' and that they actually 'participate in or contribute to the proceedings.'

Martin A. Schwartz and John E. Kirklin 2 *Section 1983 Litigation: Claims, Defenses, and Fees* 154–55 (2d ed. 1991) (footnotes omitted). Professors Schwartz and Kirklin further note:

> In determining whether the use of multiple attorneys was reasonable or instead constituted unacceptable over-lawyering, courts sometimes look appropriately to the practices of private law firms in the service of fee paying clients. The courts also frequently utilize the number of attorneys employed by the defendants as a rough gauge of the appropriateness of the plaintiff's use of multiple attorneys, noting that "[w]hat is sauce for the goose is sauce for the gander."

*Id.* at 156–57 (quoting *Patrick v. Board of Trustees*, 603 F.Supp. 754, 759 (E.D.Tex. 1984)).

The Third Circuit Court of Appeals has recognized that evidence of fees and expenditures of other parties may be relevant to the issue of the reasonableness of the petitioner's fees and leaves questions of discovery on this issue to the informed discretion of the district court. *See In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 587 (3d Cir.1984); *see also* Herbert B. Newberg, *Attorney Fee Awards* § 6.07, at 194 n. 43 (1986) [hereinafter *Fee Awards* ].[2] In *Fine*

---

**2.** The Seventh Circuit Court of Appeals has noted the limited, if any, relevance of a comparison between plaintiffs' and defendants' attorneys' fees. *Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729, 731 (7th Cir.1978) (per

curiam), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978). In rejecting any comparison between plaintiffs and defendants, the Court in *Mirabal* stated:

*Paper,* Lawrence Walner and Associates, Ltd. moved to have the court require the disclosure, *in camera,* of fees paid by the settling defendants in the underlying litigation. *Id.* at 587. "The request was made for the purpose of enlightening the court as to the reasonable hours and hourly rates for comparable lawyers in complex litigation." *Id.* The Court of Appeals for the Third Circuit noted "[t]he information sought certainly was relevant, and arguably even helpful." *Id.* (citing *Blowers v. Lawyers Co-op. Pub. Co., Inc.,* 526 F.Supp. 1324 (W.D.N.Y.1981); *Naismith v. Professional Golfers Ass'n,* 85 F.R.D. 552 (N.D.Ga.1979); *Stastny v. Southern Bell Telephone & Telegraph Co.,* 77 F.R.D. 662 (W.D.N.C.1978); *but see Samuel v. University of Pittsburgh,* 80 F.R.D. 293 (W.D.Pa.1978)). Although recognizing the relevance of the information sought, the Court of Appeals for the Third Circuit ultimately held: "Considering all the evidence offered on the hours and rates, and the likelihood that such discovery would generate inquiries into collateral matters, such as privilege, we cannot hold that the court

abused its discretion in denying the motion." *Fine Paper,* 751 F.2d at 587.[3]

In *Fine Paper,* plaintiffs sought the fees paid by the settling defendants. In the three cases cited by the Court in *Fine Paper,* plaintiffs sought limited discovery which the courts ultimately permitted. *See Blowers,* 526 F.Supp. at 1325 (allowing discovery of the amount of time spent by defendants' law firm in defending the action and the amount of costs and disbursements, but not permitting discovery of the amount of legal fees expended by defendants); *Naismith,* 85 F.R.D. at 562–64 (permitting discovery of (1) defendants' attorneys' time spent defending plaintiffs' claims; (2) billing rates; (3) total fees; and (4) defendants' out of pocket expenses); *Stastny,* 77 F.R.D. 662, 663–64 (permitting discovery of defendants' expenses, billing rates and fees, information as to the number of hours that each attorney spent on this case and on what matters the time was spent); *but see Samuel,* 80 F.R.D. 293 (W.D.Pa.1978) (prohibiting discovery of the number of hours which defense counsel

This [assertion] ignores the fact that a given case may have greater precedential value for one side than the other. Also, a plaintiff's attorney, by pressing questionable claims and refusing to settle except on outrageous terms, could force a defendant to incur substantial fees which he later uses as a basis for his own fee claim. Moreover, the amount of fees which one side is paid by its client is a matter involving various motivations in an on-going attorney-client relationship and may, therefore, have little relevance to the value which petitioner has provided to his clients in a given case.

*Id.* at 731. *See also Samuel v. University of Pittsburgh,* 80 F.R.D. 293, 295 (W.D.Pa.1978) (pointing out that the differences between bringing and defending an action, as well as the differences between the parties' interest, renders a comparison of the parties' hours irrelevant).

To the extent that *Mirabal* stands for the proposition that a defendant's fees are *always* irrelevant to a plaintiff's fee petition, this Court respectfully disagrees. Rather, this Court believes that plaintiff's comparisons to defendant's fees goes to the weight of the evidence rather than to the admissibility of the evidence.

**3.** Professor Newberg has noted:

When the fee applicant's hours or rates are challenged, the applicant will commonly seek

discovery of the opposing party's hours expended and rates charged in the litigation, to seek to prove the reasonableness of the applicant's fee request.... The prevailing view is that discovery of such information should be left to the informed discretion of the court.

While not precisely comparable to plaintiff's hours expended or rates charged, corresponding information of defendants may be desirable to permit the court to assess defendants' litigation efforts and fees as compared to the plaintiff, and to discourage challenges to the total hours or normal rates claimed in the fee application as excessive, when defendants' hours or rates are similar or significantly higher. Defendants could argue that there are distinguishing characteristics that support defendants' enhanced efforts or rates when compared to plaintiffs'. When defendants' hours or rates are lower than plaintiffs', defendants could argue that plaintiffs' hours or rates are in fact excessive and plaintiffs could point out any distinguishing characteristics to explain the differences. These proofs and rebuttals should properly go to the weight rather than the admissibility of this information. Like defendants' fee discovery of plaintiff's counsel, plaintiff's discovery of defendants' hours and rates should be narrow and focused to avoid undue delay, harassment, or expense.

*Fee Awards* § 6.07, at 194–95.

expended and the hourly rate of defense counsel).

■ Having considered defendant's arguments and also the relevant case law, the Court concludes that to the extent not already produced, defendant will be ordered to produce the following: (1) defendant's (attorneys and paralegals) time spent defending plaintiff's claims; (2) billing rates; (3) total fees; (4) defendant's out-of-pocket expenses; (5) information as to the number of hours that each attorney spent on each issue or area relating to this case which is being challenged by defendant; and (6) total of Red Clay's attorneys' time spent conferring with each other on the issues litigated in this case. Alternatively, the defendant may also comply with this Court's order by supplying its billing records and time sheets to plaintiff.[4] To the extent that plaintiff has made no request for fees for accountants, consultants, or other professionals, plaintiff is not entitled to this same information from defendant.

In so concluding, the Court notes (1) since Red Clay raised the issues of reasonableness and "overlap" by the plaintiff, the information outlined above may be helpful to plaintiff in responding to Red Clay's allegations; and (2) the Court's order is unlikely to promote confusion or collateral inquiries.

**II.**

For the reasons set forth above, plaintiff's motion to compel will be denied but information will be ordered produced in accordance with this opinion.

---

4. At oral argument defendant, Red Clay, made a blanket attorney-client privilege extending to time sheets and billing records. *See Real v. Continental Group, Inc.,* 116 F.R.D. 211, 213–14 (N.D.Cal.1986) (denying motion to compel production of time records and billing statements; observing that the Ninth Circuit "has held that the attorney-client privilege embraces attorney time, records and statements to the extent that they reveal litigation strategy and the nature of the services provided"; further observing that "simply the number of hours billed, the parties' fee arrangement, costs and total fees paid do not constitute privileged information."); *see also In re Witnesses Before the Special March 1980 Grand Jury,* 729 F.2d 489, 495 (7th Cir.1984).

As previously noted by this Court,

'The [attorney-client] privilege extends to communications from the attorney to the client, as well as reverse.' *Pitney Bowes, Inc. v. Mestre,* 86 F.R.D. 444, 446 (S.D.Fla.1980). 'The privilege only protects disclosure of com-

munications; it does not protect disclosure of underlying facts by those who communicated with the attorney.' [*Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981)].

*Synalloy Corp. v. Gray,* 142 F.R.D. 266, 268 (D.Del.1992). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and the administration of justice." *Upjohn,* 449 U.S. at 389, 101 S.Ct. at 682.

With these principles in mind, the Court concludes that production of the information outlined in the text of this opinion will in no way discourage full and frank communications between attorneys and their clients. Plaintiff has requested the information solely for the purpose of rebutting defendant's allegations of duplicative and excessive hours.