Orkin, Inc., d/b/a Orkin Pest Control, petitions for a writ of mandamus directing the trial court to vacate those portions of its orders of January 25, 2006, and April 3, 2006, directing Orkin to produce (a) all depositions of Orkin's corporate representatives in actions involving fraud and termite treatment, and (b) its Alabama customer files for the years 1978 to 2002 (hereinafter referred to collectively as "the contested items"). For the reasons stated below, we grant the petition. *Page 637 
 Procedural History
In March 2004 Larry Touart and Sandra Touart sued Orkin and Howard Holmes in the St. Clair Circuit Court. The action arose from a contract the Touarts had entered into with Orkin for the inspection, prevention, and repair of damage for a termite infestation at the Touarts' house in Ashville. That contract was entered into in 1978 and was thereafter renewed annually. In their action, the Touarts asserted claims of breach of contract, negligence, wantonness, breach of fiduciary duty, fraud, and suppression. The Touarts contend that the defendants failed to perform the termite services called for in the contract in a workmanlike manner, misrepresented that the Touarts' house had been inspected annually, and falsified inspection reports (including purportedly forging Mr. Touart's signature).
During 2004 the Touarts served Orkin with a set of requests for production. Items 4 and 20 requested:
 "[D]ocuments . . . of any kind that [show] the names and addresses of any and all people that [the defendants] provided repair work for termites in the last 10 years; and
 "[C]opies of all deposition testimony given by any agent or employee of Orkin in lawsuits involving negligence, breach of contract, or fraud within the last 10 years."
On January 24, 2006, the Touarts filed a motion to compel Orkin to supplement its responses to items 4 and 20.[1] Following a hearing the next day, the trial court granted that motion in a January 25, 2006, order that stated:
 "It is further ORDERED, ADJUDGED, AND DECREED that [Orkin] shall make available to [the Touarts] all files for homes inspected in the same district as [the Touarts] for the years 1994-2004 within 30 days from the date of this order.
 "It is further ORDERED, ADJUDGED, AND DECREED that [Orkin] shall provide [the Touarts] with all corporate representative depositions in cases regarding fraud and termite treatment within 30 days from the date of this order."
On February 24, 2006, Orkin filed a motion entitled "Defendant Orkin Inc.'s Motion for Reconsideration and Motion for Protective Order" seeking a reconsideration of the January 25, 2006, order or a protective order as to the items the trial court was ordering Orkin to produce. In that motion, Orkin requested an order "providing that Plaintiffs are not entitled to the discovery sought." On March 8, 2006, following a hearing, the trial court announced from the bench that it would deny Orkin's motion for a protective order.[2] Furthermore, on March 30, 2006, an entry was made on the docket sheet stating that the Touarts' counsel should prepare a proposed order denying Orkin's motion for a protective order. On April 3, 2006, the trial court signed the order drafted by the Touarts' counsel; that order stated:
 "[Orkin's] Motion for Reconsideration and Motion for Protective Order having been heard on March 8, 2006, and after due consideration thereof, the Court finds as follows:
 ". . . . *Page 638 
 "2. In summary, the [Touarts'] claim that, between the years 1978 to 2002, that the defendants forged the [Touarts'] names on various documents within their customer service file with the defendants and that inspections and repairs that were to be made by the defendants were not made and/or not made properly.
 "THEREFORE. . . . IT IS ORDERED AS FOLLOWS:
 "In light of the [Touarts'] claims, and the filing procedures of [Orkin], [the Touarts] have the right to go to the location of, and review the Alabama customer files of Orkin from the years 1978 to 2002. All other requests within [Orkin's] motion not herein addressed are denied."
On April 19, 2006, Orkin filed this petition to challenge those portions of the trial court's January 25, 2006, and April 3, 2006, orders that required production of the contested items.
 Standard of Review
In Ex parte Norfolk Southern Ry., 897 So.2d 290
(Ala. 2004), this Court delineated the limited circumstances under which review of a discovery order is available by a petition for a writ of mandamus and the standard for that review in light of Ex parte Ocwen Federal Bank, FSB,872 So.2d 810 (Ala. 2003):
 "`Mandamus is an extraordinary remedy and will be granted only when there is "(1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991). In Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala. 2003), this Court announced that it would no longer review discovery orders pursuant to extraordinary writs. However, we did identify four circumstances in which a discovery order may be reviewed by a petition for a writ of mandamus. Such circumstances arise (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala. 2001); (b) when a discovery order compels the production of patently irrelevant or duplicative documents the production of which clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit received by the requesting party, see, e.g., Ex parte Compass Bank, 686 So.2d 1135, 1138 (Ala. 1996); (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party's entire action or defense so that, in either event, the outcome of the case has been all but determined and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that an appellate court cannot review the effect of the trial court's alleged error. The burden rests on the petitioner to demonstrate that its petition presents such an exceptional case — that is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ'g Co., 601 So.2d 423, 426
(Ala. 1992)."
897 So.2d at 291-92 (quoting Ex parte Dillard Dep't Stores,Inc., 879 So.2d 1134, 1136-37 (Ala. 2003)). The orders here contested are reviewable under category (b) above (i.e., the burden upon Orkin of producing the documents is purportedly out of proportion to the benefit of those documents to the Touarts). *Page 639 
 Analysis
Three questions are presented by this petition: (1) What discovery actions are under review? (2) Did Orkin timely file its petition? and (3) Did the trial court exceed its discretion when it ordered production?
 1. What discovery actions are under review?
The January 25 and April 3 orders required the production of deposition testimony and customer files. As to deposition testimony, on January 25 the trial court ordered Orkin to produce "all corporate representative depositions in cases regarding fraud and termite treatment." The April 3 order was silent as to deposition testimony.
With respect to customer files, the Touarts initially requested the names and addresses of all Orkin customers to whom Orkin had provided termite service in the last 10 years. The January 25 order directed Orkin to produce "all files for homes inspected in the same district as [the Touarts] for the years 1994-2004." The April 3 order, however, varied from the January 25 order to the extent that it directed Orkin to produce its "Alabama customer files . . . from the years 1978 to 2002." The April 3 order does not reference the January 25 order.
Reading the two orders in concert, we note that the April 3 order modified the January 25 order to the extent its provisions were inconsistent with the prior order. When these orders are so construed, the directive in the January 25 order concerning production of depositions was unchanged. As to customer files, however, the April 3 order changed the directive in the January 25 order.[3] Because of that change, the contested items under review here are production of (a) "all corporate representative depositions in cases regarding fraud and termite treatment," and (b) the "Alabama customer files of Orkin from the years 1978 to 2002."
 2. Was the petition timely?
Rule 21(a)(3), Ala. R.App. P., provides:
 "The petition [for the writ of mandamus] shall be filed within a reasonable time. The presumptively reasonable time for filing a petition seeking review of an order of the trial court or of a lower appellate court shall be the same as the time for taking an appeal. If a petition is filed outside this presumptively reasonable time, it shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time."
Rule 4(a)(1), Ala. R.App. P., states that appeals as of right shall be filed within 42 days of the judgment or order from which relief is sought.
As noted above, on January 25, 2006, the trial court ordered Orkin to produce the disputed records. Orkin filed its petition for the writ of mandamus on April 19, 2006. The Touarts argue that the "presumptively reasonable time" for filing the petition began to run on January 25 and that Orkin's petition, filed more than 42 days thereafter, was untimely. Orkin argues that March 8, 2006 — the date the trial court announced in open court that it would deny Orkin's motion for reconsideration — is the earliest possible date for calculating the presumptively reasonable time for filing a petition for a writ of mandamus. If March 8 is the commencement date for determining the presumptively *Page 640 
reasonable time for purposes of Rule 21(a)(3), Orkin's petition was timely.
The timeliness issue hinges on the effect given the filing of Orkin's motion for a protective order. Orkin filed that motion on February 24, 2006.[4] The Touarts argue that the filing of that motion did not toll Orkin's obligation to file its petition with this Court within 42 days of January 25, 2006. They citeEx parte Troutman Sanders, LLP, 866 So.2d 547, 550
(Ala. 2003), in support of their position. This Court held inTroutman Sanders that a motion for reconsideration of a trial court's order denying a motion to dismiss did not toll the time for filing a petition for the writ of mandamus under Rule 21(a)(3), Ala. R.App. P. 866 So.2d at 550.
Orkin argues that Troutman Sanders did not involve a discovery dispute and that it is therefore inapplicable here. Orkin states that in Ex parte Reynolds Metals Co.,710 So.2d 897 (Ala. 1998), this Court held that a party seeking relief from a discovery order must ask the trial court for a protective order under Rule 26(c), Ala. R. Civ. P., before filing a mandamus petition. Because it sought a protective order on February 24 and did not file a mandamus petition until that request was denied on March 8, Orkin argues that its petition was timely. Based on the authority of Ex parte ReynoldsMetals Co., Orkin further argues that its mandamus petition would have been premature had Orkin filed it before the trial court ruled on its motion for protective order. We agree with Orkin.
Orkin complied with its procedural obligations to contest the trial court's discovery orders. Orkin moved for a protective order within the 30-day period in which the contested production was compelled.[5] It filed this petition after the trial court denied that motion. We reaffirm the principle that "the party seeking a writ of mandamus in a discovery dispute must properly move for a protective order under Rule 26(c), Ala. R. Civ. P.[, before petitioning for the writ]." Ex parte CITCommunication Fin. Corp., 897 So.2d 296, 298 (Ala. 2004);Ex parte Sargent Indus., Inc., 466 So.2d 961, 963
(Ala. 1985) (a party's failure to seek a protective order from the trial court bars mandamus relief because a protective order is the appropriate "procedural device for limiting or prohibiting discovery"). This sequencing promotes the sound policy of "affording] the trial court the opportunity to address its alleged error before a party seeks mandamus relief from an appellate court to correct the alleged error." Ex parteReynolds Metals Co., 710 So.2d at 900. Furthermore, in a petition challenging a discovery ruling, the petitioner cannot demonstrate the "lack of another adequate remedy" — one of the prerequisites for the extraordinary relief of the writ of mandamus — without first filing a motion for a protective order. Because Orkin filed a motion for a protective order with the trial court and filed its mandamus petition within 42 days from March 8, the date the trial court entered a ruling on the motion, Orkin's filing was made within a "presumptively reasonable time" within the meaning of Rule 21(a)(3), *Page 641 
Ala. R.App. P.[6]
 3. Did the trial court exceed its discretion?
As we concluded in section 1 above, the trial court ordered Orkin to produce depositions of its corporate representative in fraud cases and Orkin's Alabama customer files for 1978 to 2002. The Touarts allege that Orkin misrepresented that it had performed termite-repair services at their house and that it had falsified inspection reports. Because of the nature of those allegations, the Touarts contend that the contested discovery is warranted because evidence of similar misrepresentations by Orkin to other customers would be admissible in their cause.See Ex parte Allstate Ins. Co., 401 So.2d 749, 751
(Ala. 1981). Further, the Touarts argue that Orkin has not shown that the trial court exceeded its discretion in ordering the production of the contested items.
Orkin principally contests the trial court's directive that it produce its files for customers in Alabama. Orkin acknowledges that discovery in a fraud case necessarily must be broader than in other cases because of the heavy burden of proof imposed on one alleging fraud. Ex parte Union Sec. Life Ins. Co.,723 So.2d 34, 39 (Ala. 1998); Ex parte Horton,711 So.2d 979, 983-84 (Ala. 1998). Orkin also recognizes that this Court has permitted the discovery of names and addresses of non-party customers in other fraud cases. See, e.g., Ex parte FirstNat'l Bank of Pulaski 730 So.2d 1160 (Ala. 1999) (bank loan transactions of other customers over a two-year period discoverable); Ex parte Clarke, 582 So.2d 1064
(Ala. 1991) (plaintiff entitled to meaningful contact with other purchasers of conversion policies like the one it purchased). Orkin notes, however, that "even in a fraud case, discovery is not unlimited." Ex parte Union Sec. Life Ins. Co.,723 So.2d at 38. Orkin complains that the trial court did not tailor the discovery requests here with respect to time, geography, and the Touarts' claims. See Ex parte National Sec. Ins.Co., 773 So.2d 461, 465 (Ala. 2000) (discovery allowed if "closely tailored" to the fraud allegations). Because the trial court's order compelled Orkin to produce thousands of customer files from 1978 to 2002 that may be unrelated to the Touarts' claims, Orkin argues, the trial court exceeded its discretion.See Ex parte Compass Bank, 686 So.2d 1135, 1137-38
(Ala. 1996) (trial court erred in ordering discovery that was unrelated to the product purchased by the claimants and required the defendant to review 35,000 transactions). *Page 642 
Additionally, Orkin presented evidence to the trial court concerning the logistics of producing its Alabama customer files for the 24-year period. Orkin attested that it had approximately 23,000 active termite-service customers in Alabama; that the active Alabama customer files were not stored in a central location; that, because of Orkin's regional structure, the production of active customer files for Alabama would require review of records at 12 locations in 5 states; that additional files for former Alabama customers may have been stored at locations off Orkin's sites; and that the Alabama customer files were not organized by date of service. Under these circumstances, Orkin contends, the production of its customer files would be oppressive and "unduly burdensome." Rule 26(b)(1), Ala. R. Civ. P.[7] The parties argue the precedential value of two fraud cases in which this Court has allowed the discovery of the defendant's transactions with nonparty customers. In Ex parte Allstate Insurance Co.,401 So.2d 749 (Ala. 1981), the plaintiff sued Allstate alleging misrepresentation after the insurer underpaid on a claim for uninsured-motorist coverage. The plaintiff crafted an interrogatory asking Allstate to disclose the identities of its other policyholders in Alabama to whom, during a two-year period, it had paid a $10,000 uninsured-motorist benefit (the benefit payable for one vehicle) when more than one vehicle was covered. This Court held that the trial court did not exceed its discretion when it ordered the insurer to answer that interrogatory. Allstate, 401 So.2d at 750.
Further, in Ex parte State Farm Mutual Automobile InsuranceCo., 452 So.2d 861 (Ala. 1984), the plaintiff alleged that State Farm had defrauded him by including an unenforceable, anti-stacking clause in his automobile insurance policies. The plaintiff asked for the identities of other State Farm customers who, like him, had more than one policy but had received a reduced uninsured-motorist benefit. The State Farm
Court allowed that discovery, but limited it to customers who were located in Alabama. State Farm, 452 So.2d at 864.
The discovery related to nonparty customers in bothAllstate and State Farm was clearly tailored to the fraud claims in those cases. However, the production ordered by the trial court in this case — all Orkin's Alabama customer files from 1978 to 2002 — does not correlate to the Touarts' fraud issues. The trial court authorized the Touarts to review approximately 23,000 files of active Alabama customers that were stored in five states. While the Touarts are entitled to discovery of materials necessary to their fraud claims, such a broad request should not be sanctioned on the unsubstantiated hypothesis that a search of records related to nonparties might uncover fact patterns similar to their own. Accordingly, we agree with Orkin that the trial court exceeded its discretion when it ordered Orkin to produce customer files without regard to the specific fraud claims alleged by the Touarts.[8] *Page 643 
Further, the trial court exceeded its discretion because the production it ordered was not limited to periods in which discovery was reasonably calculated to lead to admissible evidence. The trial court ordered Orkin to produce nonparty customer files covering a 24-year period, and its order concerning depositions of corporate representatives was unlimited as to time.[9] No bright line exists concerning the maximum period over which a litigant should be required to search for records. The length of that period depends on whether the records being searched are "relevant to the subject matter involved in the dispute." Rule 26(b)(1), Ala. R. Civ. P.; 8 Wright, Miller Marcus, Federal Practice andProcedure § 2008 (1994). Even then, a litigant in a fraud action must show a substantial need for discovery of records that concern transactions with nonparties, that are older than five years, and that do not directly relate to the litigant's own claim or defense. See, e.g., Ex parteNational Sec. Ins. Co., supra (search sanctioned in fraud case for documents covering five years); Ex parte Union Sec.Life Ins. Co., 723 So.2d at 37 (plaintiff could discover records concerning other customers within a five-year period). The discovery of Orkin's customer files here ordered by the trial court falls outside those parameters, and, absent a showing by the Touarts of a substantial need, the trial exceeded its discretion in so ordering.[10]
 Conclusion
Orkin's petition for the writ of mandamus was timely filed. When Orkin challenged the adverse rulings on discovery, the presumptively reasonable time for filing its petition did not begin to run until the trial court ruled on its motion for a protective order. Moreover, the trial court here exceeded its discretion in the management of discovery because the production it ordered was not tailored to the Touarts' claims and covered extraordinary time periods (i.e., a 24-year period for customer files and an unlimited period for corporate-representative depositions) in which discovery could not reasonably be expected to lead to admissible evidence.[11]
PETITION GRANTED; WRIT ISSUED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
[1] While Orkin's initial response to the Touarts' request is not in the record, Orkin apparently objected to items 4 and 20 in that response.
[2] The trial court also signed a written order dated March 8, 2006, that summarily stated that it denied Orkin's motion for a protective order, but that order was not filed until April 10, 2006.
[3] It is unclear from the record why the directive in the January 25 order to produce "all files for homes inspected in the same district as [the Touarts] for the years 1994-2004" changed to "Alabama customer files . . . from the years 1978 to 2002."
[4] As noted above, this filing was entitled "Motion for Reconsideration and Motion for Protective Order."
[5] See Wang v. Hsu, 919 F.2d 130, 131 (10th Cir. 1990) (a motion for a protective order is timely if made before the date set for the discovery); United States v.International Business Machs. Corp., 70 F.R.D. 700, 701
(S.D.N.Y.1976)("motions under Rule 269(c)[, Fed.R.Civ.P.,] must be served before the date set for production"); see also
8 Wright, Miller Marcus, Federal Practice andProcedure § 2035 (1994).
[6] Our holding does not overrule Troutman Sanders.
That case concerned a mandamus petition filed after the trial court had denied the petitioner's motion for reconsideration of an order denying a motion to dismiss. Arguing that its motion to reconsider was analogous to a motion to alter, amend, or vacate a judgment under Rule 59(e), Ala. R. Civ. P., the petitioner inTroutman Sanders contended that the filing of its motion to reconsider tolled the "presumptively reasonable time" for filing its mandamus petition. Although the proper filing of a Rule 59(e) motion suspends the time for filing a notice of appeal under Rule 4(a)(3), Ala. R.App. P., the Troutman Sanders
Court rejected the petitioner's argument and held that "the tolling effect of Rule 59 is not involved with respect to motions to `reconsider' interlocutory orders." Troutman Sanders,866 So.2d at 550. This principle remains in effect. Our procedural rules do not contemplate the review of an adverse interlocutory order by a trial court through a "motion to reconsider." Therefore, absent the filing of a Rule 26(c) motion for a protective order or the use of another procedure expressly authorized by our rules to review a trial court's interlocutory order, the filing of a "motion to reconsider" in the trial court will not toll the presumptively reasonable time for filing a petition for the writ of mandamus under Rule 21(a)(3), Ala. R.App. P.
[7] There is no evidence in the record indicating that the production of depositions of corporate representative in fraud cases would be unduly burdensome. Orkin's complaint about that item is that the ordered production is unlimited as to time and geography.
[8] An example of "tailored" discovery would be a request that, during a relevant time period, Orkin produce lawsuits, claims, or customer complaints similar to the allegations made by the Touarts. The Touarts also could depose a corporate representative (or other Orkin management personnel) to explore Orkin's knowledge of falsification of termite-inspection records or like instances of alleged fraud in Alabama.
[9] The order to produce depositions also was infirm because it was unrestricted as to geography. See Ex parte State FarmMutual Auto. Ins. Co., 452 So.2d at 864 (granting a writ of mandamus to the extent a trial court required the defendant in a fraud case to identify its customers outside Alabama).
[10] We also note that the trial court ordered production of records that covered longer periods than the Touarts requested. Although the April 3 order restricted production to Orkin's customers in Alabama, it expanded the time frame for customer files from 10 to 24 years. As to depositions, the Touarts requested 10 years and received an unlimited period.
[11] Our holding pretermits consideration of Orkin's argument that production of the items would be unduly burdensome and oppressive.