[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1254 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1255 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1256 
This petition for writ of mandamus seeks review of a trial court's order regarding permissible posttrial discovery in response to a motion for a remittitur of a punitive-damages award. We deny the petition in part and grant it in part.
 I. Facts
James Blizard, doing business as Blizard Construction Company and Hollywood Materials (collectively referred to as "Blizard"), sued Vulcan Materials Company ("Vulcan") and Jeffrey Chandler. The trial court submitted the case to a jury on counts of breach of contract, various species of fraud, intentional interference with contractual or business relations, and civil conspiracy. The jury returned a verdict for Blizard on claims of breach of contract and intentional interference with business relations, awarding compensatory damages *Page 1257 
of $130,000 and punitive damages of $3 million.[2] According to the parties, the trial court entered judgment on the jury-verdict on February 1, 2006.
On March 1, 2006, Vulcan filed a "Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, for New Trial, or, in the Further Alternative, for Remittitur and Constitutional Reduction of Punitive Damages." On March 9, 2006, Blizard served Vulcan with a postjudgment request for production of documents ("the request"). The request sought, in pertinent part:
 "2. Any and all documents, including but not limited to, internal memoranda, press releases, notes, e-mail or correspondence circulated within Vulcan regarding this case and/or the verdict in this case.
 ". . . .
 "8. Any and all balance sheets, income statements and/or financial statements generated by Vulcan for the past five (5) years.
 ". . . .
 "10. Any and all documents, including but not limited to memoranda, reports and/or correspondence, whether prepared by you, your agents, employees or attorneys, that were provided to independent auditors and/or consultants regarding any other litigation against Vulcan in preparation of the Financial Reports, Annual Reports, and/or other required reports relating to Vulcan's finances for the past five (5) years or since this case has been pending, whichever is greater.
 "11. Federal corporate tax returns for Vulcan for the past five (5) years.
 "12. State corporate tax returns for Vulcan for the past five (5) years.
 "13. Audit reports prepared by Vulcan's independent auditors for the past five (5) years.
 "14. All documents and/or working papers provided to you by your independent auditors which were used to determine `materiality' in the audited financial statements during the periods described above.
 ". . . .
 "19. Any and all copies of the Minutes of each meeting of the Vulcan Board of Directors or Trustees during the past five (5) years.
 ". . . .
 "21. Any and all reports and any and all statements which Vulcan has made to its stockholders within the past five (5) years.
 "22. Copies of the complaints in each lawsuit filed within the last five years in which Vulcan is named as a defendant.
 ". . . .
 "24. Any and all documents, records, correspondence, e-mails, memos, statements, reports, papers or typed, printed or handwritten materials relating to the knowledge which Vulcan and/or its directors, managers or executive officers may have had during the past five (5) years with regard to verdicts and/or judgments rendered in the courts of Alabama during the past five (5) years.
 "25. Any and all pleadings and/or documents that Vulcan has filed in other cases in the State of Alabama in which the excessiveness of punitive damages was challenged. *Page 1258 
 "26. A copy of all pleadings or documents that Vulcan has filed (or someone has filed on its behalf) in the state of Alabama or any other state in which it argued (even indirectly) it was entitled to punitive damages.
 "27. An itemization of the fees and expenses paid to any attorney for the defense of this case.
 ". . . .
 "35. Please supplement with updated information all your previous responses to requests for production."
Blizard also served Vulcan with post-judgment interrogatories ("the interrogatories"). The interrogatories stated, in pertinent part:
 "20. State whether or not there have been, or are now, lawsuits pending against Vulcan claiming injury or damage from wrongful interference with business or contractual relations, improper restraint of trade, and/or improper price fixing. If so, for each lawsuit state:
 "(a) the date of the filing of each such lawsuit;
 "(b) the court in which such lawsuit was filed;
 "(c) the nature of each such lawsuit; "(d) the names and addresses of all parties, including plaintiffs and defendants to each such lawsuit;
 "(e) a full and complete statement of the substance of all claims and allegations of each such suit;
 "(f) the jurisdiction in which each such action was filed;
 "(g) the jurisdiction in which each such action came or will come to trial if different from answer in (f);
 "(h) the disposition of each such lawsuit; and
 "(i) the name and address of each person or entity having possession, control or custody of any or all records relating to such legal action against this defendant involving such a claim or similar claim.
 ". . . .
 "23. Please state the total amount of attorney's fees and expenses reimbursed and/or paid to your attorneys in this case. . . .
 ". . . .
 "24. Has Vulcan ever acquired rights in property which included an existing rock quarry and that another entity was operating (e.g., selling ag lime, producing rock for sale, etc.) in at the time of said acquisition? If so, please identify all such quarries and provide the name, address, and telephone number of each entity working in that quarry at the time of Vulcan's acquisition."
On April 10, 2006, Vulcan filed responses to the request and interrogatories, objecting to these discovery requests on grounds of relevance, overbreadth, undue burden, and attorney-client privilege. In particular, Vulcan objected to producing discovery of its financial wealth and condition, stating that such discovery was irrelevant because Vulcan was "expressly disclaim[ing]" reliance on its financial position as a reason for remitting the punitive damages awarded by the jury.
On April 19, 2006, Blizard filed a motion to compel Vulcan to respond to the posttrial discovery. On April 26, 2006, the trial court held a hearing on the motion to compel. Subsequently, on May 8, 2006, the trial court issued an order compelling Vulcan to respond within 21 days to the request and the interrogatories.
Eleven days later, on May 19, 2006, Vulcan filed a motion for a protective order and a conditional motion for a stay of all postjudgment discovery pending this Court's review of its petition for the writ of *Page 1259 
mandamus. In that motion, Vulcan stated that it had "already produced or [would] produce" documents sought in request no. 25, but limited to the last five years, and documents sought in request no. 26, but limited to those filed in the State of Alabama within the last five years. On May 23, 2006, the trial court denied the motion for a stay. It also denied the motion for a protective order, with one pertinent exception. It regarded Vulcan's motion as moot as it related to requests no. 25 and no. 26, stating: "[Vulcan] represented to the court that it had already answered [Blizard's] request."
On May 24, 2006, Vulcan filed its petition for a writ of mandamus, requesting an order directing the trial court to vacate its order requiring it to produce the information Blizard sought in the request and interrogatories listed above. More specifically, Vulcan argues that the trial court exceeded its discretion in ordering it to produce (1) all financial information it had generated within five years of the order; (2) information regarding Vulcan's involvement in, or knowledge of, other litigation without additional temporal or geographical restrictions; (3) minutes of meetings of its board of directors; (4) e-mail correspondence; (5) information relating to its acquisition of other quarries; (6) statements Vulcan made to its stockholders; (7) information regarding its attorney fees and litigation costs; and (8) supplementation of its preverdict discovery responses.
 II. Standard of Review
"The trial court has broad and considerable discretion in controlling the discovery process and has the power to manage its affairs . . . to ensure the orderly and expeditious disposition of cases." Salser v. K.I.W.I., S.A.,591 So.2d 454, 456 (Ala. 1991). Therefore, this Court will not interfere with a trial court's ruling on a discovery matter unless this Court "`determines, based on all the facts that were before the trial court, that the trial court clearly [exceeded] its discretion.'" Ex parte Henry, 770 So.2d 76, 80
(Ala. 2000) (quoting Ex parte Horton, 711 So.2d 979, 983
(Ala. 1998)).
"A mandamus petition is a proper means of review to determine whether a trial court has [exceeded] its discretion in discovery matters." Ex parte Alabama Dep't of Human Res.,719 So.2d 194, 197 (Ala. 1998). The petitioner seeking a writ of mandamus bears the affirmative burden of proving the existence of the conditions requisite for issuance of the writ. See Exparte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala. 2003). Mandamus relief is appropriate "when a discovery order compels the production of patently irrelevant or duplicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party." Id.
 III. Analysis A. Blizard's Right to Posttrial Discovery of Vulcan's Financial Information
The trial court's order, to the extent it granted Blizard's motion to compel production of the information Blizard sought in requests no. 8 and nos. 11-14, requires Vulcan to produce all financial information it generated within five years preceding the order. Vulcan first contends that the trial court erred in ordering it to produce that information despite Vulcan's concession "that its financial position does not warrant reduction of the punitive award." Petition, at 7. According to Vulcan, its "concession rendered that informationirrelevant to the post-trial analysis of [the] punitive award." Id. (emphasis added). Vulcan's petition requires this Court to *Page 1260 
determine, as a question of first impression, whether a defendant who has filed a motion for a remittitur of punitive damages may preclude posttrial discovery of its financial information by stipulating that it will not rely on its financial status as a ground for the remittitur. We answer that question in the affirmative.
Under Rule 26(b)(1), Ala. R. Civ. P., a party "may obtain discovery regarding any matter, not privileged, which isrelevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." (Emphasis added.) Considerations relevant to a trial court's inquiry on a motion for a remittitur of punitive damages have been promulgated by the United States Supreme Court. InBMW of North America, Inc. v. Gore, 517 U.S. 559,116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), that Court set forth three "guide-posts" for determining whether a punitive-damages award offends the United States Constitution. Those guideposts are "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." State Farm Mut. Auto. Ins. Co. v.Campbell, 538 U.S. 408, 418, 123 S.Ct. 1513,155 L.Ed.2d 585 (2003) (discussing the guideposts set forth in BMW).
Additionally, in its review of a punitive-damages award, this Court considers the factors set forth in Hammond v. City ofGadsden, 493 So.2d 1374 (Ala. 1986), and Green Oil Co.v. Hornsby, 539 So.2d 218 (Ala. 1989). Those factors include (1) the reprehensibility of the defendant's conduct; (2) the harm that actually occurred, or that is likely to occur, from the defendant's conduct; (3) the defendant's profit from its misconduct ("the profitability factor"); (4) the relationship between the defendant's financial position and the size of the punitive-damages award ("the relationship factor"); (5) the cost to the plaintiff of the litigation; (6) whether the defendant has been subject to criminal sanctions for similar conduct; and (7) other civil actions the defendant has been involved in arising out of similar conduct. See Shiv-Ram, Inc. v.McCaleb, 892 So.2d 299, 317 (Ala. 2003) (discussing theGreen Oil factors).
Blizard says that the financial evidence he seeks is discoverable under two of these Green Oil factors. Specifically, he argues that the evidence is relevant (1) to the relationship factor, and (2) to the profitability factor. We disagree.
1. Relationship factor.
"[T]he purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer . . . from committing similar wrongs in the future."Green Oil, 539 So.2d at 222 (emphasis added). Society's goal is to deter — not to destroy
— the wrongdoer. Id. To effectuate that purpose, a punitive-damages award "`ought to sting in order to deter.'" Id. (quoting Ridout's-Brown Serv., Inc. v.Holloway, 397 So.2d 125, 127 (Ala. 1981) (Jones, J., concurring specially) (emphasis added)).
"A party does not have a right to a Hammond hearing on the question of the adequacy of punitive damages."Ex parte Weyerhaeuser Co., 702 So.2d 1227, 1229
(Ala. 1996) (emphasis added). "In regard to punitive damages, the purpose of the Hammond hearing [at which the GreenOil factors are considered] is to protect adefendant against due process violations arising from an award of excessive *Page 1261 
damages." Id. (emphasis added). Indeed, where a jury has awarded punitive damages, a trial court may not, consistent with the right to a trial by a jury as guaranteed by Ala. Const. 1901, § 11, order an additur of punitive damages under any, or any combination, of the Green Oil
factors. Bozeman v. Busby, 639 So.2d 501, 502 (Ala. 1994).
In that connection, Vulcan states:
 "If a defendant has conceded that its financial position provides no basis for remittitur, then further discovery directed to that factor is pointless because a court's analysis of the factor will not change in any way based upon the relative wealth of the defendant. . . . [W]hen presented with such a concession, there is simply nothing more for the court to consider."
Reply brief, at 7-8 (emphasis added). We agree. Because theGreen Oil factors are considered for the benefit ofdefendants, a defendant may waive the benefit of one or more of the factors.
In fact, our cases have held that a defendant's failure to produce evidence of its net worth effectively negates the benefit to the defendant of the relationship factor. In other words, a defendant cannot argue as a basis for reducing the punitive-damages award that the award "stings" too much, in the absence of evidence of the defendant's financial status.See Shiv-Ram, 892 So.2d at 319 (defendant's concession that it was insured, coupled with the absence of "evidence that payment of the damages awarded [would] cause it any undue financial hardship. . . . weigh[ed] against a finding of excessiveness"); Lance, Inc. v. Ramanauskas,731 So.2d 1204, 1220 (Ala. 1999) (where the defendant produced no evidence of its net worth or evidence "showing that the verdict [would] affect its future insurability," the relationship factor would not benefit the defendant); Employees' Benefit Ass'n v.Grissett, 732 So.2d 968, 981 (Ala. 1998) (where the defendant "stipulated that it would not be crippled financially if it had to pay the punitive damages award," the relationship factor was of no benefit). Moreover, it has, indeed, been held — correctly, in our view — that a defendant may avoid extensive inquiry into its financial affairs simply by stipulating to its net worth, Sprague v. Walter,441 Pa.Super. 1, 62, 656 A.2d 890, 920 (1995) ("it is a sound defense strategy to prevent freewheeling financial discovery by stipulating to a specific net worth"), or to its ability to satisfy a punitive-damages award. Cobb v. Superior Ct. ofCalifornia, 99 Cal.App.3d 543, 551, 160 Cal.Rptr. 561,566-67 (1979) (inquiry into the effect of a verdict awarding punitive damages can often be satisfied by a "simple request for a stipulation").
Here, by expressly conceding "that its financial position does not warrant reduction of the punitive award," Petition, at 7, Vulcan has disclaimed reliance on the relationship factor as a reason for remitting the punitive-damages award. That disclaimer requires the trial court to weigh the relationship factor against a remittitur. Consequently, financial discovery as to that factor is unnecessary and irrelevant.
2. Profitability factor.
The parties dispute the relevance of evidence of a defendant's general financial status, or net worth, to the profitability factor. In Green Oil, this Court said: "`If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.'"539 So.2d at 223 (quoting Aetna Life Ins. Co. v. Lavoie,505 So.2d 1050, 1062 (Houston, J., concurring specially)). *Page 1262 
Blizard contends that the financial information he seeks in the requests is relevant to enable the trial court to determine whether the punitive-damages award exceeds the profit Vulcan realized from its wrongful conduct. However, according to Vulcan:
 "While there may be circumstances where certain financial information could be relevant to [the profitability] factor, Blizard's notion that he can obtain sweeping discovery into all aspects of Vulcan's finances to advance his arguments with regard to that factor cannot be right. The key is that the factor seeks to remove the profit arising from the alleged conduct for which punitive damages are being imposed, not any profit generally."
Reply brief, at 9 (emphasis added). We agree with Vulcan. The profitability factor speaks to the particular conduct that occasioned the imposition of punitive damages. Evidence of Vulcan's general financial status is far too attenuated for useful analysis under the profitability factor.
In that connection, Vulcan did not object to Blizard's request for the production of documents ostensibly relevant to the specific circumstances at issue. In particular, Blizard sought in request no. 32, and Vulcan expressly agreed to produce, "[a]ny and all documents, items or things which reflect Vulcan's profit per ton of rock sold from the Scottsboro quarry for the past ten (10) years." However, Blizard's requests no. 8 and nos. 11-14 are not directed to, and do not reference, profit
from the conduct underlying this litigation. Therefore, production of those documents would add little, or nothing, of value to a profitability analysis beyond what Vulcan has agreed to produce.[3]
For these reasons, we conclude that the trial court exceeded its discretion in denying Vulcan's motion for a protective order as to the financial information sought in requests no. 8 and nos. 11-14. Thus, we grant Vulcan's petition insofar as it is directed to that portion of the request.
 B. Discovery of Other Litigation
According to Vulcan, "[t]he circuit court exceeded its discretion in requiring Vulcan to produce information concerning" Vulcan's involvement in, or knowledge of, other litigation, without regard to where or when the litigation was filed, "or whether the subject matter of the lawsuits was remotely similar to the claims made in this case." Petition, at 9. This argument relates to requests no. 10, no. 22, and no. 24, as well as to interrogatory no. 20. It should, of course, be noted that one of the inquiries is limitedgeographically to the State of Alabama (request no. 24), and some of the inquiries are temporally limited to five years (requests no. 10, no. 22, and no. 24), while one of the inquiries has neither temporal nor geographical limitations (interrogatory no. 20).
Without reasonable temporal and geographical limitations and subject-matter similarity, Vulcan argues, discovery of the requested material would be unduly burdensome and oppressive, as well as "ultimately irrelevant to the question of punitive damages." Petition, at 12. More specifically, Vulcan contends that a reasonable inquiry would be limited to litigation involving *Page 1263 
Vulcan in the State of Alabama within fiveyears of this dispute. Id. We agree.
"`The first step in determining whether the court has [exceeded] its discretion is to determine the particularizedneed for discovery, in light of the nature of theclaim.'" Ex parte Henry, 770 So.2d 76, 80 (Ala. 2000) (quoting Ex parte Rowland, 669 So.2d 125, 127 (Ala. 1995) (emphasis added)). To be relevant to a constitutionally sanctioned punitive-damages review, any extraterritorial conduct of the defendant "must have a nexus to the specificharm suffered by the plaintiff." Campbell,538 U.S. at 422, 123 S.Ct. 1513 (emphasis added). An action in one state may not be "used as a platform to expose, and punish, the perceived deficiencies of [a defendant's] operations throughout the country." Campbell, 538 U.S. at 420,123 S.Ct. 1513. "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff. . . ." 538 U.S. at 422-23,123 S.Ct. 1513. This is so, because, "as a general rule," a State does not "have a legitimate concern in imposing punitive damages to punish defendants for unlawful acts committed outside of the State's jurisdiction." 538 U.S. at 421, 123 S.Ct. 1513. Thus, a litigant may not seek to support a punitive-damages award through discovery aimed at generic, undelineated out-of-state conduct.
Our recent cases have stated or applied similar principles, albeit in different terms, in the context of general pretrial discovery. The Court has insisted that discovery requests be "closely tailored" to the plaintiffs claims. Ex parteHorton, 711 So.2d 979, 983 (Ala. 1998). Nationwide discovery has been held "overly broad and . . . not closely tailored to the nature of the [plaintiff's claims]." Ex parteHenry, 770 So.2d at 80. See Ex parte Orkin, Inc.,960 So.2d 635, 642 (Ala. 2006) (an order compelling production of customer files "stored in five states" was not closely tailored and could not be "sanctioned on the unsubstantiated hypothesis that a search of records related to nonparties might uncover fact patterns similar to" those underlying the plaintiffs' claims); Ex parte National Sec. Ins. Co.,773 So.2d 461, 465 (Ala. 2000) (an order limiting discovery to five years and to the borders of Alabama was "closely tailored" to the plaintiffs fraud allegations); see also Ex parte UnionSec. Life Ins. Co., 723 So.2d 34, 40 (Ala. 1998) (the trial court exceeded its discretion in compelling production of "records from a seven-state area" in the "Southeast").
Furthermore, discovery requests must generally be subject to reasonable temporal limitations. In Ex parteOrkin, we said:
 "No bright line exists concerning the maximum period over which a litigant should be required to search for records. The length of that period depends on whether the records being searched are `relevant to the subject matter involved in the dispute.' Rule 26(b)(1), Ala. R. Civ. P.; 8 Wright, Miller 
Marcus, Federal Practice and Procedure
§ 2008 (1994). Even then, a litigant in a fraud action must show a substantial need for discovery of records that concern transactions with nonparties, that are older than five years, and that do not directly relate to the litigant's own claim or defense."
960 So.2d at 643 (emphasis added). See also Ex parte OcwenFed. Bank, FSB, supra (trial court did not exceed its discretion in restricting the discovery period to five years);Ex parte Wal-Mart, Inc., 809 So.2d 818, 822 (Ala. 2001) (the trial court properly narrowed discovery of "customer *Page 1264 
incident reports and employee accident review forms to Alabama stores and to a five-year period"); Ex parte NationalSec. Ins. Co., 773 So.2d at 465 (a discovery order limited to five years was proper); Ex parte Union Sec. Life Ins.Co., 723 So.2d at 39 (a discovery order limited to five years and to the borders of Alabama was proper). AlthoughOrkin and some of the cases cited above involved fraud claims, it is well established that greater latitude is allowed for "discovery in a fraud case . . . because of the heavy burden of proof imposed on one alleging fraud."960 So.2d at 641. Thus, a fortiori, a temporally unlimited discovery order in a nonfraud case challenging a punitive-damages award, which is subject to the constitutional constraints outlined in BMW, supra, andCampbell, supra, is overly broad in the absence of a showing of a substantial need for the material sought.
The relevant claim in this case is intentional interference with contractual or business relations. Request no. 10 seeks production of "[a]ny and all documents . . . provided to independent auditors . . . regarding any other litigation against Vulcan . . . for the past five (5) years." Request no. 22 seeks production of "[c]opies of the complaints in each lawsuit filed [against Vulcan] within the last five years." Request no. 24 seeks production of "all documents, records, correspondence, . . . or handwritten materials relating tothe knowledge which Vulcan and/or its directors, managers or executive officers may have had during the past five (5) years with regard to . . . judgments rendered in the courts of Alabama during the past five (5) years." (Emphasis added.) Interrogatory no. 20 seeks specific information on everylawsuit ever filed "against Vulcan claiming . . . wrongful interference with business or contractual relations, improper restraint of trade, and/or improper price fixing."
Vulcan objects to the scope of the requests for information regarding other lawsuits or claims against it. In support of its argument, Vulcan presented the affidavit of William F. Denson III, "Senior Vice President, General Counsel, and Secretary" of Vulcan. He stated that Vulcan has been in operations for 49 years and that its business is international in scope, and he testified in detail regarding the difficulties and attendant costs of attempting to comply with Blizard's discovery requests.
In response, Blizard concedes that, to be relevant, evidence of out-of-state conduct must be "similar" to the conduct involved in this case. Blizard's brief, at 13-14. More specifically, he states: "Evidence of other similar acts of Vulcan is relevant to the trial court's analysis of the degree of reprehensibility of its conduct in a post-judgment analysis of the punitive damages awarded by the jury." Id.
at 13. However, he makes no attempt to explain how the extraterritorial conduct of Vulcan that is apparently the subject of these discovery inquiries is similar, or closely tailored, to the litigation involved here. Requestno. 24, for example, seeks to discover facts known toall Vulcan's management personnel —wherever they reside — regarding every Alabama judgment entered in a five-year period, regardless of thenature of such a judgment. In so doing, request no. 24 goes far beyond the scope of any legitimate inquiry. Request no. 24 is fatally flawed because of the conspicuous absence of similarity to, and nexus with, this litigation.
Requests no. 10 and no. 22 are similarly international in scope. Consequently, they are also not closely tailored to this litigation. In addition to being international in scope,interrogatory no. 20 places no temporal
restriction on discovery of "transactions *Page 1265 
with nonparties," Ex parte Orkin, 960 So.2d at 643, and Blizard does not attempt to demonstrate a "substantial need for discovery of records . . . that are older than five years."Id. Interrogatory no. 20, therefore, is impermissibly broad, failing both temporal and nexus requirements.
Blizard says "it is inaccurate to suggest that Alabama courts have refused to up-hold all instances where a trial court did not impose time and area limitations on discovery requests." Blizard's brief, at 14 (emphasis added). For that proposition, however, he cites only Ex parte PhiladelphiaLife Insurance Co., 682 So.2d 392 (Ala. 1996). It is true that in Ex parte Philadelphia Life, a fraud case, this Court refused to impose temporal or geographical restrictions on the plaintiffs' interrogatories and production requests.Philadelphia Life has not been cited by any court. It is obviously inconsistent with our more recent cases, and is hereby overruled.
We conclude, therefore, that the trial court exceeded its discretion in compelling production of requests no. 10, no. 22, and no. 24 and interrogatory no. 20. The petition is granted insofar as it relates to those discovery items.[4]
 C. Discovery of Minutes of Vulcan's Board of Directors
Vulcan next contends that the trial court exceeded its discretion in compelling production of "[a]ny and all copies of the Minutes of each meeting of the Vulcan Board of Directors or Trustees during the past five (5) years." Request no. 19. As this case is postured, we agree.
Regarding the contents of these minutes, Denson's affidavit states:
 "3. In my capacity as Secretary of the corporation, I am responsible for taking and maintaining the corporate minutes of all meetings of the board of Directors of the corporation.
 ". . . .
 "6. Information contained in the Minutes includes material, nonpublic information as defined by the rules and regulations of the Securities and Exchange Commission. This material, nonpublic information does not in any manner concern the plaintiff or this litigation. As such, inadvertent or improper divulgence of this information could be a violation of the federal securities laws and regulations.
 "7. There has been no reference to or mention of this litigation recorded in the Minutes of the Company during the last five years."
(Emphasis added.)
 "The broad rules of discovery `should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and produce a variety of information which does not reasonably bear upon the issues in the case.' Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). . . ." *Page 1266 
Ex parte Wal-Mart Stores, Inc., 682 So.2d 65, 68
(Ala. 1996) (Hooper, C.J., dissenting) (emphasis added).
Blizard makes the conclusory statement that the minutes of Vulcan's board meetings are relevant to certain GreenOil factors. Blizard's brief, at 20-21. Significantly, however, he ignores the affidavit of Vulcan's secretary stating that those minutes do "not in any manner concern the plaintiff or this litigation" and contain "no reference to or mention of this litigation." In other words, Blizard makes no attempt to explain how the minutes, which do not concern or mention him or his case, might be relevant to a review of the punitive-damages award. That being so, request no. 19 contemplates what is essentially a "fishing expedition" to determine whether the statements in the affidavit are true. That is not the purpose or goal of permissible discovery. The trial court exceeded its discretion, therefore, in ordering Vulcan to produce the material sought by request no. 19, and as to it Vulcan's petition is granted.
 D. Discovery of Vulcan's E-mails
Vulcan contends that the trial court exceeded its discretion in denying its motion for an order protecting against the production of "[a]ny and all . . . e-mail or correspondence circulated within Vulcan regarding this case and/or the verdict in this case." Request no. 2. It insists that the burden of "gathering whatever e-mails exist" will subject it to "extraordinary expense." Petition, at 21.
Vulcan also insists that "[a]ny known e-mails pertaining to the issues in the case that were created before the case was filed have already been produced during the merits stage," and it argues that, "[b]y definition, every one of the e-mails now sought by Blizard — as they were created after the case was filed — will have been prepared in anticipation of litigation and almost certainly will be protected by thework-product doctrine." Petition, at 20 (emphasis added). It further contends that "the e-mails will have norelevance to the assessment of punitive damages because they all were created after the time of the conduct upon which the punitive damages were assessed." Petition, at 21 (emphasis added).
While this petition was pending, we decided Ex parte CooperTire Rubber Co., 987 So.2d 1090 (Ala. 2007), which involved arguments by Cooper Tire Rubber Company ("Cooper"), similar to those made here by Vulcan, "that its burden of production with respect to e-mails [would] entail thousands of hours and [would] cost hundreds of thousands of dollars." 987 So.2d at 1104. We said:
 "With respect to Cooper's contentions that the quantity of materials to be produced for discovery . . . is simply too vast to be managed without undue time and expense, we believe that the trial court's exercise of its discretion over the discovery process requires some reference to standards designed to address the technology of information that is available, or that can be made available, on electronic media. . . .
 ". . . .
 ". . . In light of [the] showing by Cooper, we believe that it is appropriate for the trial court to consider in more detail Cooper's arguments
as to its cost of producing e-mails."
987 So.2d at 1104-1105 (emphasis added). We then acknowledged that, although neither the courts of this state nor the legislature has developed standards for discovery of electronically stored information, the federal court system has addressed such standards. We directed the trial court to consider Cooper's motion for a protective order in light of Fed.R.Civ.P. 26(b)(2)(B) *Page 1267 
("Specific Limitations in Electronically Stored Information"), and the factors set forth in Wiginton v. CB Richard Ellis,Inc., 229 F.R.D. 568 (N.D.Ill. 2004).
As we did in Cooper Tire Rubber, we deny the petition as to the e-mails sought in request no. 2, but with directions for the trial court to reconsider Vulcan's motion for a protective order as to the e-mails sought in request no. 2 in light of the authorities cited and discussed in that case and in light of Vulcan's argument that the e-mails sought in request no. 2 will likely be work product and its contention that the e-mails would not likely lead to relevant information.
 E. Discovery of Other Quarries
Interrogatory no. 24 asks whether "Vulcan [has] ever acquired rights in property which included an existing rock quarry and that another entity was operating (e.g., selling ag lime, producing rock for sale, etc.) in at the time of said acquisition." It then demands that Vulcan "identify all such quarries and provide the name, address, and telephone number of each entity working in that quarry at the time of Vulcan's acquisition." Vulcan responded to interrogatory no. 24 byproducing the information relating to "every existing quarry that it [had] acquired in Alabama in the last 15 years," Petition, at 23-24, but, in its motion for a protective order, Vulcan objected to the production of information on extraterritorial acquisitions and acquisitions beyond 15 years on the grounds that it would be of "negligible benefit" to Blizard, and that "[requiring Vulcan to produce information relating to every quarry [to which] it has acquired the rights . . . outside the State of Alabama since the date of its corporate inception [would be] unnecessary, unmanageable and unduly burdensome." Vulcan supported the latter contention with Denson's affidavit, which stated, in pertinent part:
 "10. Following identification of all existing quarry locations, a search of all records relating to acquisition of these locations will be required. In addition to an estimated volume of 1,300 feet of paper at the corporate offices, an unknown volume of records at seven (7) division offices and over two hundred (200) quarry locations in twenty-one (21) states and Mexico will require extensive review time. The majority of the locations will require extensive review and cross-check of records to accurately respond to this request. A conservative estimate of the time required to locate and identify information in response to this request is 2,040 hours at a cost of $125.00 per hour. This time does not include any travel time and costs that will be necessary to execute a diligent search and review."
Vulcan also insists that compliance with the interrogatory would "certainly produce an enormous amount of wholly irrelevant information," because, it argues, "information regarding quarries in some other state or country that were owned by Vulcan 10 or 20 — much less 50 — years ago would not be relevant to the punitive damages analysis in this case." Reply brief, at 19. Blizard's only relevant response to this argument consists of a conclusory assertion that the information may yield "admissible evidence regarding the duration of Vulcan's conduct, the existence and frequency of similar past conduct, the degree of awareness of the hazards its conduct caused or is likely to cause, concealment or cover-up of its conduct, and whether the award will deter Vulcan's future conduct." Blizard's brief, at 22.
However, as we discussed in Part III.B. of this opinion, such nationwide — and international — discovery is "not closely tailored to the nature of the [plaintiff's *Page 1268 
claims]." Ex parte Henry, 770 So.2d 76, 80 (Ala. 2000). This nexus principle is essential in the context of a punitive-damages review such as is involved here.
Likewise, as we noted above, a discovery order exceeding five years is temporally overbroad and improper in the absence of a showing of a substantial need for the materials sought. Clearly, Blizard has not demonstrated such a need for information predating the information of the past 15 years that Vulcan has already produced. For these reasons, the trial court exceeded its discretion in ordering Vulcan to produce the material sought by interrogatory no. 24. Thus, the petition is granted as it relates to interrogatory no. 24.
 F. Discovery of Statements Made to Stockholders
Request no. 21 demands production of "[a]ny and all
. . . statements which Vulcan has made to itsstockholders within the past five (5) years." (Emphasis added.) Vulcan contends that "there is no justification for such an onerous discovery demand." We agree. Indeed, Blizard's brief entirely omits any reference to this request. Because compelling production of request no. 21 was not a proper exercise of discretion, the petition is granted as to it.
 G. Discovery of Vulcan's Attorney Fees
According to Vulcan, the trial court, in compelling Vulcan to respond to request no. 27 and interrogatory no. 23, erroneously required "Vulcan to produce detailed information concerning its attorneys' fees and other costs in this case." Petition, at 26. Vulcan argues that a defendant's litigation costs are irrelevant to "the cost of the litigation," the fifth factor enunciated in Green Oil, 539 So.2d at 223.
In Green Oil, this Court directed trial courts to consider "`[a]ll the costs of litigation . . . so as toencourage plaintiffs to bring wrongdoers to trial.'"539 So.2d at 223 (emphasis added) (quoting Aetna Life Ins. Co.v. Lavoie, 505 So.2d at 1062 (Houston, J., concurring specially)). Ordinarily, a defendant's litigation costs are, indeed, irrelevant for purposes of "encouraging plaintiffs to bring wrongdoers to trial." This Court's jurisprudence clarifies that this particular Green Oil factor is directed toward the plaintiffs litigation costs. See, e.g., OrkinExterminating Co. v. Jeter, 832 So.2d 25, 42 (Ala. 2001) (the litigation-cost factor enunciated in Green Oil
requires a court to "consider whether the punitive-damages award was sufficient to reward the plaintiff's counsel for assuming the risk of bringing the lawsuit and to encourage other victims of wrongdoing to come forward." (emphasis added)).
Information relating to a defendant's attorney feesmay be discoverable in a proper case, such as where adefendant places its litigation costs in issue by challenging the reasonableness of a prevailing plaintiff's request for attorney fees. Murray v. Stuckey's Inc.,153 F.R.D. 151, 152 (N.D.Iowa 1993) (discovery of information relating to defendants' attorney fees was permitted where the defendants "resisted plaintiffs' fee claim both on the basis of the number of hours claimed and the hourly rate applied");Coalition to Save Our Children v. State Bd. of Educ. ofDelaware, 143 F.R.D. 61, 64 (D.Del. 1992) (discovery of information relating to defendant's attorney fees was permitted in response to the defendant's contention that the "plaintiff's hours overlapped and were unreasonable").
From all that appears, however, this is not such a case. There is no allegation that the reasonableness of Blizard's attorney fees is at issue. Thus, the trial *Page 1269 
court exceeded its discretion in ordering Vulcan to produce the material sought by request no. 27 and interrogatory no. 23, and, as to that discovery, Vulcan's petition is granted.
 H. Supplementation of Vulcan's Preverdict Responses
Finally, Vulcan contends that the trial court exceeded its discretion in compelling it to respond to request no. 35: "Please supplement with updated information all yourprevious responses to requests for production." (Emphasis added.) According to Vulcan, "[t]he discovery permitted in the post-judgment phase is . . . limited and different from the merits phase. [Blizard] has not offered, and cannot offer, any explanation as to why Vulcan should be put to the burden of supplementing all of its responses after the trial has been conducted." We agree. Indeed, Blizard's brief does not mention request no. 35 or seek to justify it. Consequently, we grant Vulcan's petition as to request no. 35.
 IV. Conclusion
In summary, Vulcan's petition is granted and the writ of mandamus issued as to the requests and the interrogatories discussed above, except as to the production of e-mails in request no. 2. In that respect, the petition is denied and the trial court is directed to reconsider Vulcan's motion for a protective order in light of Cooper Tire Rubber, supra, and the authorities cited therein.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
SEE, LYONS, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the rationale in part and concurs in the result.
COBB, C.J., concurs in the result.
[2] Vulcan and Blizard dispute whether the verdict form is inconsistent regarding which of the defendants is responsible for the compensatory-damages award. That dispute is beyond the scope of this petition, and nothing in this opinion is to be construed as determinative of whether the verdict is inconsistent in form or substance.
[3] Interestingly, Vulcan has also agreed to produce
information as to its net worth for the years 2002 to 2005, in addition to "public financial reports which have been generated by Vulcan for the past five (5) years," as well as "all documents . . . that [it provided] to independent auditors and/or consultants regarding this case in preparation of the Financial Reports . . . relating to Vulcan's finances" since this case has been pending. Reply brief, at 10 n. 4.
[4] Vulcan's petition also addresses requests no. 25 and no. 26, which concern pleadings and/or documents filed byVulcan. However, in its order denying Vulcan's motion for a protective order, the trial court characterized objections directed at requests no. 25 and no. 26 as moot. It apparently did so on the basis of Vulcan's representation that it would produce the documents sought in those requests but limited geographically to Alabama and temporally to five years. As we understand the court's order, the court accepted
Vulcan's representation, and, by doing so, so limited
the scope of requests no. 25 and no. 26. Thus, we deem it unnecessary to address Vulcan's arguments as to those discovery points.